# United States Court of Appeals

## For the First Circuit

No. 02-1801

PAUL CAMPAGNA,

Plaintiff-Appellant,

v.

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF ENVIRONMENTAL PROTECTION,

Defendant,

DAVID HOWLAND; DEIRDRE DOHERTY CABRAL; MARY HOLLAND;
EDWARD KUNCE; ALAN WEINBERG; AND DAVID B. STRUHS,

Defendants-Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Caroline Carrithers for appellant.
Timothy M. Jones, Assistant Attorney General, with whom Thomas
F. Reilly, Attorney General, were on brief for appellees.

July 3, 2003

**HOWARD**, **Circuit Judge**. Paul Campagna ("Campagna"), an employee of the Massachusetts Department of Environmental Protection ("DEP") and DEP-certified septic system inspector, claims that six DEP employees[1] subjected him to a retaliatory administrative proceeding that deprived him of his constitutional rights to petition the government for redress of grievances under the First Amendment and to equal protection under the Fourteenth Amendment. Finding that Campagna failed to state a claim for relief under 42 U.S.C. § 1983, the district court granted the defendants' motion to dismiss Campagna's federal claims under Fed. R. Civ. P. 12(b)(6) and declined to exercise supplemental jurisdiction over the remaining state law claims. We affirm.

## I. Factual and Procedural Background

We cull the relevant facts from Campagna's amended complaint, taking them in the light most favorable to the plaintiff. Campagna began working for the DEP in 1985 as an environmental engineer, and was promoted soon thereafter. He unsuccessfully sought a further promotion, while candidates were hired for positions at the level sought by Campagna who were in his view "less qualified, but more politically connected." Frustrated

---

[1]Campagna sued David Howland, Deirdre Doherty Cabral, Mary Holland, Edward Kunce, Alan Weinberg, and David Struhs (apparently misidentified in the pleadings as "David Struh"). Campagna initially named the DEP as a defendant in his § 1983 claim, but later assented to its dismissal from the suit.

by his situation, Campagna left the DEP in 1992 for a position with the federal government. As soon as he left, the DEP announced a position for which Campagna was qualified. He immediately applied for the position, but defendant David Howland, the DEP employee responsible for filling the position, refused to hire him.

Campagna brought suit in state court, claiming that he was entitled to preferential hiring because of his status as a veteran of the Vietnam War. The court agreed, and ordered the DEP to place him in the position unless a better qualified candidate who was also a veteran applied for the job. The DEP appealed, contending that Campagna was not qualified for the position.[2] As part of a 1995 settlement of the dispute, Campagna ultimately accepted a different position that was "less desirable."

Campagna continued working for the DEP without incident for more than two years. During this period, Campagna also ran a private after-hours business designing and monitoring septic systems. In April 1997, Campagna was hired to upgrade a septic system of a home in Westfield, Massachusetts that had failed an inspection conducted by another inspector, identified in the pleadings as "Mr. Lally" ("Lally"). Lally had concluded that the

---

[2]Although the significance of the allegation is unclear, Campagna alleges "on information and belief" that defendants Howland and Kunce made a secret agreement that, if forced to hire Campagna for the position he sought, "they would fire him during the six-month probationary period." These allegations connected to the 1992 lawsuit are the only instances in which Howland and Kunce are singled out in the amended complaint.

-3-

system was installed too close to the groundwater and that the tank had an unsealed "weep hole," a small hole allowing drainage of any water that accumulates in the tank prior to installation. Campagna inspected the system and concluded that Lally was incorrect in both respects. Campagna advised Westfield's board of health to reevaluate the system. The board notified the DEP of the discrepancy, and on October 11, 1997, defendant Cabral, a DEP employee, reinspected the site, accompanied by inspector David Recoulee ("Recoulee") and others.

Cabral evaluated the soil in a 10-foot deep inspection hole and found evidence of a high groundwater level of 26 inches.[3] Like Lally, Cabral concluded that the system had been installed too close to the groundwater. Cabral instructed Recoulee to "fail the system." Recoulee did not make any independent evaluation of the average height of high groundwater.[4] Cabral also concluded that Campagna's determination that the weep hole had been adequately sealed was invalid because he had not emptied the tank to reach this finding. Cabral initiated an administrative proceeding or "enforcement action" against Campagna "without first sending the plaintiff a Letter of Non-Compliance," charging him with two willful

---

[3]Cabral had taken a 32-hour soil inspection course the previous year, and had not inspected any other sites prior to the October 11, 1997 inspection.

[4]Campagna alleges that if Recoulee had made his own estimate, it would have been consistent with Campagna's.

-4-

violations of state regulations commonly known as Title 5[5] for (1) inaccurately estimating the groundwater level and (2) failing to complete a required form.

Also in October 1997 (although the precise date is not set forth in the amended complaint), the DEP brought an enforcement action against another inspector, Timothy Maginnis ("Maginnis"). Like Campagna, Maginnis was fined without first receiving a notice of non-compliance. Campagna "actively supported" Maginnis's subsequent appeal. This support included a March 1999 letter from Campagna to Maginnis's attorney "exonerating Mr. Maginnis."

On August 28, 1998, Campagna was fined $1500 for the violations that were the subject of the October 1997 reinspection. Campagna appealed, and on November 1, 2000, an administrative judge reduced the fine to $100. According to the amended complaint, the judge found that, except for the minor violation of failing to note the owner's explanation regarding the weep hole, the accusations against Campagna were unfounded. The judge also found that Campagna had been subjected to a different standard than other inspectors, basing her conclusion in part on the fact that both Lally and Recoulee failed to include similar information in their inspection forms but had not been accused of violations.

_____

[5]"Title 5" refers to Mass. Regs. Code tit. 310, §§ 15.000, et seq. (state environmental regulations governing on-site sewage treatment and disposal systems), available at http://www.lawlib. state.ma.us/title5.html.

Campagna contends that his groundwater estimate was accurate, and that the findings made by Lally and Cabral were incorrect. According to the amended complaint, Cabral (acting "under the direction of the other defendants") ignored key evidence that would have validated Campagna's estimate, including monthly readings from a test hole on the property. Campagna further alleges that only three other inspectors (including Maginnis, the inspector Campagna "actively supported") have been subjected to enforcement actions by the Western Regional Office of the DEP, and only two of these inspectors were fined.

During the pendency of Campagna's appeal of the enforcement action, defendant Alan Weinberg advised Campagna not to discuss his case with other DEP employees, and required him to request permission to visit other areas of the DEP's Western Regional Office in an effort to prevent Campagna from discussing his case with fellow employees. Also, at some time after another DEP employee advised defendant Mary Holland that he intended to testify on Campagna's behalf, the employee "was falsely accused by the DEP of visiting pornography sites on the Internet during office hours." This employee left the DEP, accepting a lower-paying position because he "could no longer tolerate the animosity of the defendants."[6]

---

[6] Like the allegations regarding defendants Howland and Kunce, see note 2, above, and defendant Struhs, see note 6, below, these references to Weinberg and Holland are the only allegations in the

Campagna brought suit in May 2001, claiming violations of his constitutional rights (under 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, §§ H-I) and common law defamation.[7]  According to Campagna, the enforcement action violated his constitutional right to petition the government for redress of grievances under the First Amendment because it was initiated in retaliation for his 1992 lawsuit and his support of Maginnis's appeal.  Further, the enforcement action violated his Fourteenth Amendment right to equal protection under the law because he had been held to a different standard than other inspectors.  The defendants moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) as to both of the alleged constitutional violations.  The district court granted the motion, dismissing the case in toto after declining to exercise supplemental jurisdiction over the remaining state law claims.  This appeal followed.

---

amended complaint (other than an initial identification of the defendants) in which Weinberg or Holland are identified by name. All other references to them are only generalized references to "the defendants."

[7]Campagna alleges that "the defendants" made defamatory statements about him in connection with the enforcement action, with harmful consequences for his private inspection business. See Campagna v. Commonwealth, 206 F. Supp. 2d 120, 123 (D. Mass. 2002). Defendant David Struhs is the only defendant identified by name in connection with these allegations.  Because these allegations relate solely to the defamation claim under Massachusetts common law, they are not repeated here.

## II.   Analysis

We review the district court's Rule 12(b)(6) ruling de novo, crediting all well pleaded facts in the complaint, and drawing all reasonable inferences in Campagna's favor.  Nethersole v. Bulger, 287 F.3d 15, 18 (1st Cir. 2002).  We affirm the dismissal "only if, under the facts alleged, [the plaintiff] cannot recover on any viable theory."  Id. (quoting Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir. 2001)).  Despite a generous reading, the amended complaint falls short of stating a viable constitutional claim.

### A.        First Amendment

We begin with Campagna's claim that the enforcement action violated his right to petition the government for redress of grievances.  The district court found that Campagna had failed to allege that his 1992 lawsuit or his support of Maginnis's appeal implicated matters of public concern.[8]  Thus, it concluded, Campagna failed to state a claim challenging a retaliatory action by his employer.  The district court relied on the principle that, except in unusual circumstances, public employees claiming an adverse employment action in retaliation for exercising their First

---

[8]In addition to (1) the 1992 lawsuit, and (2) Campagna's support of Maginnis, the district court found that Campagna alleged a third course of conduct, namely his appeal of the enforcement action, that prompted retaliatory action by the Defendants.  See Campagna, 206 F. Supp. 2d at 123.  In our view, however, the only form of retaliation alleged by Campagna is the enforcement action itself.

Amendment rights must allege that their conduct touched on matters of public concern. Connick v. Meyers, 461 U.S. 138, 147 (1983) (applying public concern doctrine in connection with claim made under the Free Speech Clause of the First Amendment); see also Nethersole, 287 F.3d at 18-19 (same); Tang v. State of Rhode Island, 163 F.3d 7, 11-12 (1st Cir. 1998) (same); Boyle v. Burke, 925 F.2d 497, 505 (1st Cir. 1991) (discussing, in dicta, the applicability of the public concern doctrine to claim made under the Petition Clause). The "public concern" doctrine balances the First Amendment rights of a citizen-employee against the interest of a government-employer in maintaining order and efficiency in the workplace. See Connick, 461 U.S. at 140 (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968)).

The facts of this case are complicated by Campagna's dual roles as a DEP employee and a DEP-certified inspector. According to the amended complaint, however, the DEP took action against Campagna in his capacity as a private inspector, not as a DEP employee. Other than the relatively minor allegation that Campagna and his fellow employees were advised not to discuss his appeal of the enforcement action, Campagna alleges no adverse impact on his employment with the DEP, such as a transfer, demotion, or termination.[9] Instead, Campagna complains that his private business

_____

[9]To the extent Campagna alleges that the restrictions on discussing his case in the workplace constituted a retaliatory employment action, we uphold the district court's application of

-9-

of inspecting and updating septic systems suffered as a result of adverse publicity regarding the enforcement action. "Since the reason for the test is missing in the present case -- maintaining order in the governmental workplace -- the [public concern doctrine] should not be applied here." Gable v. Lewis, 201 F.3d 769, 771 (6th Cir. 2000) (holding that, as an independent contractor for a government agency, plaintiff alleging retaliation need not prove that her complaint for sex discrimination touched on matters of public concern). So too in the present circumstances.

Our First Amendment inquiry does not end here, however, because we may affirm the district court's dismissal of the First Amendment claim on any ground supported by the record. Aldridge v. A.T. Cross Corp., 284 F.3d 72, 84 (1st Cir. 2002). Therefore, we consider whether Campagna has satisfied the pleading requirements of Rule 12(b)(6). In so doing, we are not bound to credit "bald assertions, unsupportable conclusions, and opprobrious epithets." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989)(internal quotation omitted)(quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)). While forgiving, Rule 12(b)(6) "is not entirely a toothless tiger." Id. A plaintiff must allege facts in support of "each material element necessary to sustain recovery under some actionable legal theory." Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

the public concern doctrine.

-10-

In the amended complaint, Campagna gives a chronological account of his relationship with the DEP, both as an employee and as a private inspector. Campagna's claim turns on the allegations that Cabral acted "under the direction of the other defendants"[10] when she undertook the enforcement action, and that this was done in retaliation for Campagna's earlier lawsuit and support of Maginnis. Compl. ¶¶ 24, 27, 34. These are the only allegations that link the critical events in Campagna's case. But more than five years had passed since Campagna filed his lawsuit, a suit undertaken in the context of his employment with the DEP, not his private inspection business. The allegations in Campagna's complaint do not support a fact-based inference that the "direction" given to Cabral by the defendants was anything other than routine supervision of Cabral as a DEP employee.[11] Without more, we cannot credit Campagna's unsupported conclusion that the enforcement action was undertaken to retaliate against Campagna.

---

[10]Campagna's frequent references to "the defendants" highlight the generality of his allegations. Taken literally, they would include defendant Struhs, who is named only in Campagna's common law defamation claim.

[11]Campagna fails to allege that any defendant other than Cabral directly participated in the enforcement action. To the extent Campagna relies on these defendants' positions within the DEP as a basis for supervisory liability, he has failed to allege facts sufficient to allow such an inference. See Rogan v. Menino, 175 F.3d 75, 78 (1st Cir. 1999)("To state a cognizable claim on that basis, [the plaintiff] needed to depict a scenario that would permit a fact-based inference that [the defendants] were guilty of conduct that amounted to condonation or tacit authorization of wrongdoing.").

Similarly, even if we make the tenuous assumption that Campagna's support of Maginnis's appeal is properly characterized as an exercise of Campagna's rights under the Petition Clause -- an issue we do not address today -- he fails to state a claim for deprivation of that right. Campagna's allegation that, "[o]n information and belief, the defendants were aware of plaintiff Campagna's support of Mr. Maginnis," Compl. ¶ 17, does not bridge the gap between his support for Maginnis's appeal and the enforcement action. Campagna identifies a single act of support in the amended complaint -- a letter written in 1999 (and months after Campagna was fined) to Maginnis's attorney on Maginnis's behalf. But he fails utterly to link his writing of the letter to the allegedly retaliatory enforcement action.

As to the First Amendment claim, we find that the amended complaint fails to meet even the minimal requirements to survive a motion to dismiss. See Coyne v. City of Somerville, 972 F.2d 440, 443-45 (1st Cir. 1992). Accordingly, we affirm the district court's dismissal of that claim.

**B.          Equal Protection**

We turn to Campagna's claim that he was denied equal protection under the law on the ground that he was treated differently from inspectors Lally and Recoulee. Campagna does not allege that he is a member of a protected class or group. Relying on Village of Willowbrook v. Olech, 528 U.S. 562, 563-64 (2000), he

claims instead that he is a "class of one," an individual who has been treated differently from others similarly situated without any rational basis for the disparate treatment.

We consider whether Campagna sufficiently alleged that he was treated differently from others "similarly situated" and that there was no rational basis for the treatment. As we read the amended complaint, Lally failed the system on the Westfield property, Campagna arrived at a different result, and Recoulee participated in an investigation intended to resolve the discrepancies between the two conclusions. Recoulee did not make his own independent inspection of the property, but instead failed the system at Cabral's direction.

Lally and Campagna were not similarly situated for the purposes of determining whether Campagna was treated unfairly: the two inspectors reached different results. See Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp., 246 F.3d 1, 8-9 (1st Cir. 2001) (finding plaintiff developer and other developers who applied for tax credit were not similarly situated where, under facts alleged in complaint, plaintiff could have been found to have more questionable business acumen and judgment). The October 1997 investigation (the so-called "third" inspection) resulted in a DEP finding, whether accurate or not, that Lally's conclusion was correct. And Recoulee was unlike either Lally or Campagna. Recoulee was not hired by the homeowner to inspect the property for

the purposes of certification -- he was part of a DEP investigation into the conflicting conclusions. These facts, even when taken in the light most favorable to Campagna, defeat any claim that the enforcement action was irrational or arbitrary. To the contrary, it was Campagna's conclusions as an inspector (in conflict with another inspector's) that prompted the enforcement action.

Aside from the dispute over the groundwater calculations, Campagna argues that we should find that his right to equal protection under the law was violated because the DEP fined him, but not Lally or Recoulee, for failing to fill out certain paperwork. The DEP fined Campagna for this technical violation as part of a proceeding that found him responsible for a substantive violation of law. The defendants -- who we assume <u>arguendo</u> took part in the DEP's decision to discipline Campagna -- were under no obligation to take enforcement action for technical violations by other inspectors found to have committed no other violation of law. A state agency may allocate its resources in this manner without raising the specter of discriminatory enforcement. <u>Cf.</u> <u>Kisser</u> v. <u>Cisneros</u>, 14 F.3d 615, 620 (D.C. Cir. 1994). We find no equal protection violation under these facts.

**C.      State Law Claims**

The district court dismissed Campagna's state law claims without prejudice, finding this an inappropriate case for exercising

supplemental jurisdiction.  See Rodriguez v. Doral Mortgage Corp.,
57 F.3d 1168, 1177 (1st Cir. 1995).  We affirm this decision.

### III.    Conclusion

For the foregoing reasons the order of the district court
dismissing the amended complaint is **affirmed.**