REINHARDT, Circuit Judge,
dissenting:
I dissent. Unlike the majority, I agree with the other circuits that the class-of-one theory of equal protection is applicable to public employment decisions. Accordingly, I would uphold the jury’s verdict on the equal protection claim, including its award of $175,000 in compensatory damages and $125,000 in punitive damages. I concur in the majority’s holding as to the takings *1011 clause issue, although for somewhat different reasons. Thus, I would also affirm the district court’s award to Engquist of an additional $50,000, consisting of forty percent of the total $125,000 punitive damages awarded in connection with the state law claim. Because I would uphold the jury verdict in its entirety, I would not remand the case to the district court.
The majority’s holding relating to the class-of-one theory of equal protection creates inter-circuit conflict, is at odds with the precedent of the Supreme Court and of this circuit, and is not justified by the policy concerns raised by the majority. Every other circuit to have considered this question has applied the class-of-one theory to employment. See, e.g., Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir.2006); Whiting v. Univ. of S. Mississippi 451 F.3d 339, 348-50 (5th Cir.2006); Scarbrough v. Morgan County Bd. of Educ., 470 F.3d 250, 260-61 (6th Cir.2006); Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir.2005); Levenstein v. Salafsky, 414 F.3d 767, 775-76 (7th Cir.2004); Campagna v. Massachusetts Dep’t of Envtl. Prot., 334 F.3d 150, 156 (1st Cir.2003); Bartell v. Aurora Pub. Sch., 263 F.3d 1143, 1149 (10th Cir.2001). Even before the Supreme Court articulated the class-of-one principle in Village of Willowbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), other circuits recognized it as a straightforward application of equal protection principles. See, e.g., Ciechon v. City of Chicago, 686 F.2d 511, 522-23 (7th Cir.1982).
The majority’s position is also at odds with the approach taken by this circuit. Until now, we have recognized that a class-of-one equal protection claim is no different from any other equal protection claim that does not involve a protected class. For example, Squaw Valley Dev. Co. v. Goldberg, 375 F.3d 936 (9th Cir.2004), which applied the class-of-one theory to the differential enforcement of environmental regulations on ski resorts, employed the rational basis test defined in Armendariz v. Penman, 75 F.3d 1311 (9th Cir.1996) (en banc), the same test that we employ in other equal protection cases. See also Valley Outdoor Inc. v. City of Riverside, 446 F.3d 948, 955 (9th Cir.2006); Seariver Mar. Fin. Holdings Inc. v. Mineta, 309 F.3d 662, 679-80 (9th Cir.2002). Although this circuit has not previously considered the class-of-one theory in the employment context, nothing in our earlier cases suggests that, contrary to the view of all the other circuits to have considered the question, it is not applicable to employment cases. Indeed, the majority does not identify a single case in our equal protection jurisprudence or that of any other circuit that limits equal protection rights in the context of public employment.
The majority’s approach is also at odds with Supreme Court precedent. The Supreme Court has made clear that people have a right not to be singled out by the government for arbitrary and irrational treatment. Olech, 528 U.S. at 564, 120 S.Ct. 1073. Of course, courts must be most cautious, and apply a higher standard of review, when the government treats groups differently on the basis of certain protected characteristics; but even when a protected class is not involved, government actions must be supported by a rational basis. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 448-49, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Thus, we must find that an employee’s equal protection rights are violated when he is “intentionally treated differently from others similarly situated and ... there is no rational basis for the difference in treatment.” Olech, 528 U.S. at 564, 120 S.Ct. 1073.
The majority attempts to distinguish Olech because that case involved a regula *1012 tory decision, rather than an employment decision. The majority argues that a distinction in treatment under the equal protection clause between employment and regulatory actions is justified because the state has greater powers when it acts as a regulator than when it acts as an employer. The majority is correct that there are differences between the state’s powers in the two realms. However, unlike in the First and Fourth Amendment contexts, upon which the majority relies, the Court has not limited the Fourteenth Amendment’s scope as applied to public employment. See Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); see also Nevada Dep’t of Human Res. v. Hibbs, 538 U.S. 721, 728-29, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003) (applying gender-based equal protection case law from outside the employment context to public employees). New circuit courts have given any consideration to the idea that the class-of-one doctrine does not apply to employment, and none has ever so held. Furthermore, even in the First and Fourth Amendment contexts, in which courts have concluded that some limitations on individual rights are necessary to facilitate government employment, federal employees do not give up their rights to be free from hostile, arbitrary, and malicious treatment by the government. See Garcetti v. Ceballos, — U.S.—,—, 126 S.Ct. 1951, 1958, 164 L.Ed.2d 689 (2006) (“[P]ublie employees do not surrender all their First Amendment rights by reason of their employment.”); Nat’l Treasury Employees Union v. Von Raab, 489 U.S. 656, 664, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (“Our earlier cases have settled that the Fourth Amendment protects individuals from unreasonable searches conducted by the Government, even when the Government acts as an employer.”).
Although the majority acknowledges that its position is at odds with that uniformly taken by other courts, it disregards this conflict because it is needlessly concerned that the class-of-one rule would eliminate at-will employment. There is no cause for the majority’s concern. The application of class-of-one equal protection principles is hardly fatal to at-will employment. The rational basis test has always been used to insulate governmental decisions from searching review that would interfere with governmental functions, while still protecting individuals against heinous governmental conduct. The rational basis test can play this role as successfully here as in other equal protection cases. It is certainly not necessary, in order to preserve the concept of at-will employment, to hold that the government may freely treat its employees maliciously and irrationally.
The majority, nevertheless, views the requirement set forth in Squaw Valley that government conduct not be “malicious, irrational, or plainly arbitrary” as inherently at odds with at-will employment. It apparently believes that arbitrary treatment of public employees is a necessary and acceptable part of public employment. I disagree. Moreover, the Squaw Valley test is not as threatening to at-will employment as the majority believes: it would not render all discharges that are not for just cause unconstitutional. Rather, in the present context as in the context of statutory interpretation, “plainly arbitrary” must be construed in relation to the other words in the clause. See United States v. King, 244 F.3d 736, 740-41(9th Cir.2001) (“[Wjords are to be judged by their context and ... words in a series are to be understood by neighboring words in the series.” (quoting United States v. Carpenter, 933 F.2d 748, 750-51 (9th Cir.1991))). Accordingly, actions are “plainly arbitrary” in the sense of being violative of the equal protection clause only if they include an element akin to irrationality or malice. Thus, for example, an employer would not violate the equal protection *1013 clause if he were to lay off every fifth employee, even though the selection criteria might appear rather arbitrary in the non-contextual sense of the term. It would, in contrast, be a violation of the plainly arbitrary provision if a supervisor were summarily to fire an employee because the employee’s sister refused his sexual advances.
Moreover, the experience of other circuits demonstrates that the class-of-one theory of equal protection is not in practice fatal to at-will employment. The seven circuits that have recognized the theory continue to have at-will employment. The government is able to terminate employees in these circuits for no reason, or for any reason that does not violate the equal protection clause. Nor are those circuits drowning in the “flood” of class-of-one employment disputes feared by the majority. Rather, as the majority notes, those circuits have set standards for assessing class-of-one employment disputes such that petitioners win only in extreme cases. The lack of success of most plaintiffs in these circuits demonstrates the ability of the courts to allow for recovery under the class-of-one theory without constitutional-izing every employment dispute.
The courts that have considered the application of the class-of-one theory to employment have used three, overlapping techniques to limit its reach. The Second Circuit, and the Seventh Circuit have, in some instances, required the petitioner to identify an identically situated individual who was not discriminated against. See, e.g., Neilson, 409 F.3d at 104; Indiana State Teachers Ass’n v. Bd. of Sch. Comm’s, 101 F.3d 1179, 1181-82 (7th Cir.1996). Others require a showing of animus or malice. See Jennings v. City of Stillwater, 383 F.3d 1199, 1211 (10th Cir.2004) (applying this standard and collecting cases). The third group applies the rational basis test, putting the burden on the petitioner to disprove any rational reasons brought forward by the petitioner. See, e.g., Whiting, 451 F.3d at 349; Lauth v. McCollum, 424 F.3d 631, 634(7th Cir.2005).
The best approach, that adopted by this circuit in a regulatory case, Squaw Valley, authored by Judge Tashima, includes aspects of all three techniques. A plaintiff must show both that he was treated differently than others and that there was no rational basis for this treatment. Squaw Valley, 375 F.3d at 944 (quoting Olech, 528 U.S. at 564, 120 S.Ct. 1073). A plaintiff can show that he was treated differently either by comparing his treatment to that of someone very like himself, or by showing that the government’s treatment of him was motivated by undeserved malice.[1] See Squaw Valley, 375 F.3d at 945, 947(finding no similarly situated comparator but still finding for the plaintiff under a class-of-one theory because the defendant “harbor[ed] actual ‘hostility’ and ‘antagonism’ ” for the plaintiff). There is no need for an identically situated comparator in cases involving malice because the government does not ordinarily treat people maliciously, and, thus, is obviously treating individuals unequally under such circumstances.[2] Id.
The plaintiff can show that no rational basis exists in a class-of-one case by show *1014 ing than an “asserted rational basis was merely a pretext for different treatment.” Squaw Valley, 375 F.3d at 945-46 (internal quotations omitted). Such pretext may be shown by demonstrating “either: (1) the proffered rational basis was objectively false; or (2) the defendant actually acted based on an improper motive.” Squaw Valley, 375 F.3d at 946. As to the second prong, reasons that are “malicious, irrational or plainly arbitrary” cannot provide a rational basis. Armendariz, 75 F.3d at 1326; see also Cleburne Living Ctr., 473 U.S. at 448-49, 105 S.Ct. 3249; Scarbrough, 470 F.3d at 261. Thus, malice can in some circumstances serve as a basis for showing both disparate treatment and lack of rational basis.
Under this test, I would affirm the district court’s determination that Engquist’s equal protection rights were violated. Engquist presented her case on the theory that Szczepanski and Hyatt were acting out of malice. The jury agreed, finding that Engquist’s termination was “arbitrary, vindictive or malicious.” Accordingly, Engquist has demonstrated that she was singled out to be the target of government malice and that this malice was the cause of her termination.[3]
I see no reason to abandon the test that Judge Tashima thoughtfully endorsed for the court in Squaw Valley. I certainly would not reject it in favor of a rule that conflicts with that adopted by every other circuit to consider this question. Accordingly, I dissent from the majority’s reversal of the finding of liability on the equal protection count and would affirm both the compensatory and punitive damages in that regard.
On the takings clause question, I agree with the majority’s holding that the punitive damages provisions of Oregon law do not violate the takings clause. I reach this conclusion because the plaintiff has no interest at all in punitive damages, which exist to punish the defendant rather than to reward the plaintiff, unless and until such interest is created by state law.[4] Under its statute, Oregon chose to give the plaintiff an interest in only forty percent of the amount that the jury assesses against the defendant on a state claim for malicious conduct. The plaintiff is never afforded possession of or any right to the other sixty percent of the award, as that money is awarded directly to the state in the court’s judgment. Under such circumstances, the majority is correct that the plaintiff has no property right in that other sixty percent. Accordingly, I concur in the majority’s holding and would leave Engquist’s forty percent punitive damages award on the state claim unchanged.[5]
In sum, I would conclude that the district court did not err in holding that Engquist’s equal protection rights were violated and would affirm the award of general and punitive damages on the basis of that claim.[6] I would also affirm the *1015 apportionment of the punitive damages relating to the state law claim. Because I would uphold the general and punitive damages on the equal protection grounds and the apportionment of the punitive damages on the state law claim, I would affirm- the district court judgment in its entirety. I respectfully dissent.

. This is not to say that an employer cannot act on his dislike of an employee where that dislike has its roots in the employee's mediocre performance or lack of initiative, or in some other response to the individual not based on malice or irrationality, even if the employee has met the minimum requirements of the job.

. Although the majority believes that requiring malice would be inconsistent with Olech, I do not suggest such a requirement here. I simply assert that a showing of malice as the cause is enough to show that an individual was subjected to differential treatment.

.I note that the majority objects only to the class-of-one theory and does not argue that, if such a standard is applicable, Engquist failed to assert sufficient evidence to establish a violation. The State likewise focuses its attack on the class-of-one theory and raises a sufficiency of the evidence claim only as to Engquist's failure to point to any individual situated identically to herself. As I note, however, an identically situated comparator is not required in cases of malice.

. A different rule might apply if the state took a share of punitive damages awarded under federal law, but that is not at issue in this case.

. Like the majority, I reject Engquist’s other arguments relating to the apportionment of punitive damages.

. I agree with the majority as to the substantive due process claim. However, because the damages for the substantive due process violation were merged into the larger sums *1015 awarded for the equal protection clause violation, my conclusion as to the equal protection clause is sufficient to support the entire federal damages award. Thus, the majority’s conclusion as to substantive due process does not affect the outcome in any manner.
I likewise agree with the majority’s conclusions relating to the exclusion of the Corristan verdict.