**Wilfredo Silva PEREZ, et al., Plaintiff,**

**v.**

**Yolanda ZAYAS, et al., Defendants.**

**No. CIV 03–1744SECCVR.**

United States District Court,
D. Puerto Rico.

Oct. 3, 2005.

John F. Nevares, Esq., Miguel J. Ortega Nuñez, Esq., San Juan, PR, for Plaintiffs.

Jo–Ann Estades Boyer, Esq., José Enrico Valenzuela Alvarado, Esq., San Juan, PR, for Defendants.

**OPINION AND ORDER**

VELEZ–RIVE, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Wilfredo Silva Pérez ("plaintiff") filed this civil rights action against defendant Yolanda Zayas, Secretary of the Department of the Family, Ms. Azalia Ortega de Tirado and Ms. María A. Arroyo Torres, in their personal and official capacities, for political discrimination and retaliation in his government employment. Plaintiff claims are filed under 42 U.S.C. § 1983 and § 1988, the First and Fourteenth Amendments of the United States Constitution, for injunctive relief to enjoy defendants from further retaliatory and discriminatory acts, and for supplemental jurisdiction under the Constitution of the Commonwealth of Puerto Rico and Law No. 80 and 426, and Art. 1802 of the Puerto Rico Civil Code (**Docket No. 1**). In essence, plaintiff avers in the complaint his whistle blower activities on matters of public concern, resulted in defendants engaging in retaliatory acts against him, including unfounded field investigations, and resulting in receipt of notice by defendant Zayas of intention to dismiss plaintiff from his career position.

Defendants filed a motion for summary judgment predicated on plaintiff's lack of evidence of genuine issues of material facts, collateral estoppel and/or res judicata, having no evidence to support a *prima facie* case of political discrimination or to establish a whistle blower protection under the First Amendment, as well as there being no *respondeat superior* liability as to defendant Yolanda Zayas on qualified immunity grounds. (**Docket No. 41**). The motion included defendants' Statement of Uncontested Facts and documents attached thereto. (**Docket Nos. 42, 43, 45**). On August 16, 2005, translations to the English language of defendants' documents were filed. (**Docket No. 58**).

Defendants submit in their request for summary disposition there were reasons for plaintiff's dismissal grounded on illegal acts determined after an investigation and report of an administrative hearing held on April 30, 2003. Defendants also aver this administrative determination, wherein the parties had adequate opportunity to present all issues, should have preclusive effect on plaintiff's federal action and he should thus be collaterally estopped from litigating above claims upon being provided with all due process required. In the alternative, defendants request qualified immunity should preclude plaintiff's federal claims.

Plaintiff filed his Opposition to Defendants' Summary Judgment with the corresponding attachments and exhibits and an Opposition to Statement of Uncontested Statement of Facts and Sworn Statement. (**Docket No. 51**). On September 9, 2005, the corresponding translations were filed. (**Docket No. 65**).

Plaintiff submits in his opposition, with evidence to contravene defendants' claims, that the allegations of plaintiff's illegal acts and the investigation pursued by the government agency was motivated by retaliation for his previous denouncement of government corruption, that defendants' claims as to threats and stalking of an employee were false, as well as the subsequent acts to seek an order of protection against plaintiff, and that even administrative errors attributed to his work performance were unsubstantiated and illegally grounded on a discriminatory intention. Plaintiff also opposes defendants' request for collateral estoppel and qualified immunity.

Defendants filed a Reply to Plaintiff's Opposition (**Docket No. 64**) and plaintiff's filed a Sur-reply on September 26, 2005. (**Docket No. 72**).

The parties have consented to proceed before this Magistrate Judge for all further proceedings, for which reason resolution of the dispositive motion now follows. (**Docket No. 35**).

## II. FACTUAL BACKGROUND

Plaintiff worked for sixteen (16) years in different positions with the Department of the Family of the Commonwealth of Puerto Rico. For the last eight (8) years, he worked as Family and Social Assistant Technician III. On March 20, 2002, plaintiff wrote a memorandum to defendant Zayas, Secretary and Agency Head of the Department of the Family, with copy to the United States Department of Agriculture, indicating employees within the Vega Baja Office of said government department were disclosing public, privileged and confidential information regarding the socioeconomic and eligibility status of beneficiaries. On March 21, 2002, plaintiff wrote a letter to the Puerto Rico Comptroller, Manuel Díaz Saldaña, indicating employees within the Vega Baja Office were submitting applications for relatives that contained fraudulent and false information to qualify for benefits. On April 24, 2002, plaintiff sent a letter to Gladys Rodríguez Dueño, Interim Director of the Department of the Family, Vega Baja Office, informing of the above irregularities and acts of corruption by government employees and indicating that one of the employees who performed such acts had falsified plaintiff's signature.

On May 19, 2003, defendant Zayas sent a final letter of dismissal terminating plaintiff's employment.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact."

*Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. *Id.* Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Id.*

At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood .... " *Greenburg v. Puerto Rico Mar. Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987). In fact, "[o]nly if the record, viewed in [this] manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir., 1997).

■ Finally, when considering this motion, unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment. *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 677 (1st Cir.1996) (reversing summary judgment and emphasizing that "determinations of motive and intent ... are questions better suited for the jury") (internal quotation marks omitted) (citation omitted). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

## IV. LEGAL DISCUSSION

### A. First Amendment Constitutional Protection.

■ It is clear that non-policymaking public employees, such as plaintiff, are constitutionally protected from adverse employment decisions on account of their political affiliation. *See Rutan v. Repub. Party,* 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). This constitutional doctrine is premised on the fact that politically motivated discharge infringes on freedom rights protected by the U.S. Constitution, such as the freedom of belief and association encompassed in the First Amendment. *Elrod v. Burns,* 427 U.S. 347, 355–58, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Padilla–Garcia v. Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000).

■ A government employee "may not be dismissed for exercising rights protected under the First Amendment." *Hennessy v. City of Melrose,* 194 F.3d 237, 245 (1st Cir.1999). At the same time, that employee's free speech rights must be balanced against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *see Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Connick v. Myers,* 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

To substantiate entitlement to summary disposition, defendants submit having no controversy as to these facts:

1. Plaintiff worked at the Department of the Family for approximately sixteen (16) years and his last position was as Social and Family Assistance Technician III at the Vega Baja Office. Defts' uncontroverted facts ¶ 1.

2. On March 20, 2002, plaintiff wrote a memorandum to Secretary Zayas stating that employees of the Vega Baja Office were disclosing confidential and privileged information of benefit applicants, with copy to the Secretary of the U.S. Department of Agriculture. Exhibit 2.

3. On March 21, 2002, plaintiff wrote to Mr. Díaz Saldaña, the Puerto Rico Comptroller, informing that employees of the Department of the Family had submitted benefit applications of family members with false and fraudulent information so they could qualify for benefits. Exhibit 3.

4. On April 16, 2002, Mr. Díaz Saldaña answered plaintiff's letter. Defts' uncontroverted facts ¶ 4.

5. On April 22, 2002, José A. Fonseca Rodríguez, Director of Internal Audit Office of the Department of the Family, wrote a letter to Ms. Carmen L. Arroyo Chinea, Director of the Regional Office of Bayamón Area, regarding an administrative investigation of employee Olga M. Adorno Ríos, from the Vega Baja Local Office. *Id.* ¶ 5; Exhibit 4.

6. On April 24, 2002, plaintiff wrote a letter to Mrs. Gladys Rodríguez Dueño, Acting Director of the Vega Baja Local Office, informing acts of corruption and irregularities at said office insofar that employees were submitting fraudulent information so family members would be granted benefits. Deft's uncontroverted facts ¶ 6; Exhibit 5.

7. On April 29, 2002, Mr. Fonseca Rodríguez wrote another letter to Mrs. Rodríguez Dueño regarding the administrative investigation of employee Olga M. Adorno Ríos. Exhibit 6.

8. A Special Internal Audit Investigation appears October 25, 2002, for the period of July 1, 1993 through August 28, 2002, concluding, as to plaintiff Silva Pérez, he was negligent in the handling of three cases, to wit; Ms. Olga M. Adorno Rios, Ms. Heidy M. Corniel Liranzo, Mrs. Providencia Avilés Pizarro. Exhibit 8.

9. On March 20, 2003, a Letter of Intention to Dismiss was sent to plaintiff indicating the information verified by the Internal Audit Office's report as to above three (3) cases and the legal grounds that would support his dismissal. Exhibit 10.

10. On April 1, 2003, defendant María A. Arroyo Torres received a call from the Veterans' Affairs Hospital, indicating he would "kill Meche" (Mrs. María Mercedes Rivera de Collazo), an employee from the Department of the Family. Exhibit 11.

11. In relation to above, Mrs. Arroyo Chinea issued an Incident Report dated April 1, 2003, to the Director of the Legal Division, Mrs. Carmen Aponte Ayala, related to the aggressive behavior of plaintiff Silva Pérez. Exhibit 11.

12. On April 1, 2003, a Letter of Summary Discharge was issued referring to the previous Letter of Intention to Dismiss and to the incident related to Mrs. María Mercedes Rivera de Collazo, "Meche", summarily dismissing

plaintiff from his position. Exhibit 13.

13. On April 2, 2003, a temporary Order of Protection was granted by the Court of First Instance, Vega Baja Part, against plaintiff Silva Pérez. Exhibit 12.

14. On April 30, 2002, a report was issued, after an administrative hearing was held on April 22, 2003, recommending the dismissal of plaintiff Silva Pérez. Exhibit 9.

15. On May 19, 2003, a final letter of dismissal was sent to plaintiff. Exhibit 14.

16. On August 13, 2002, plaintiff filed an appeal of the agency's decision to dismiss him before the Public Service Labor Relations Board which was thereafter withdrawn. Exhibit 15.

17. As a result of the investigation conducted at the Department of the Family, two (2) other employees, in addition to plaintiff, were dismissed, to wit; plaintiff's former supervisor, Ms. Alba Taboa and Mrs. María Mercedes Rivera de Collazo "Meche". Defts' uncontroverted ¶ 29, Silva Pérez' depo pp. 34–35, 48.

Defendants submit that plaintiff Silva Pérez lacks a cause of action of political discrimination and a *prima facie* case of his First Amendment violation since he cannot establish a causal connection between his political beliefs, his First Amendment claim, and defendants' adverse employment actions. If such *prima facie* burden is met, plaintiff must still meet the burden of establishing that defendants' reasons for his dismissal were pretextual to cover up for a discriminatory animus.

### 1. Prima Facie Case / Direct Evidence.

An analysis follows on whether plaintiff could meet the burden for a *prima facie* case to establish deprivation of his claimed First Amendment rights because of his political beliefs.

██ In claims of political discrimination in employment, non-policy making employees have the burden to produce sufficient evidence, direct or circumstantial, from which a rational jury could find that their political affiliation was a substantial or motivating factor behind the adverse employment action in other words, establish causation.[1] *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir.1996); *Acevedo Diaz v. Aponte*, 1 F.3d 62, 66 (1st Cir.1993). The employer must then articulate a non-discriminatory basis for the adverse employment action and establish, by a preponderance of the evidence, that it would have taken such action without regard to plaintiffs' political affiliation. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The analysis established by *Mt. Healthy* for political discrimination cases passes the burden of persuasion to the defendant-employer once plaintiffs have produced sufficient evidence of a *prima facie* case. In other words, "the plaintiff-employee will prevail unless the fact finder concludes that the defendant has produced enough evidence to establish that the plaintiff's dismissal would have occurred in any event for nondiscriminatory reasons." *Padilla Garcia*, 212 F.3d at 77–78. Thus, defendants must persuade the court that their proffered non-discriminatory reason

---

1. See *Padilla–Garcia*, 212 F.3d 69 (1st Cir. 2000) indicting that once plaintiff satisfies this burden, the devoir of persuasion shifts to the defendants to prove that they would have taken the same action regardless of plaintiff's political affiliation.

is credible. *Rodriguez Rios v. Cordero*, 138 F.3d 22, 26 (1st Cir.1998).

Plaintiff Silva Pérez' opposition submits having a First Amendment right on matters of public concern, that is, his denouncement regarding fraud by employees of the Vega Baja Office to obtain benefits for family members of federally funded programs. Defendants have submitted the administrative investigation showed plaintiff was part of the illegal scheme. Plaintiff contests the investigation arguing it was in retaliation and an adverse employment act because of his denouncement of corruption.

■ The line of Supreme Court cases striking the balance between a government's employee First Amendment right and the government's right to efficient public service has yielded a three-part test, which this court summarized in *O'Connor v. Steeves*, 994 F.2d 905, 912–13 (1st Cir. 1993). *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers*, 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The court must first determine whether the issue about which the employee spoke was a "matter of public concern;" if not, there is no claim for First Amendment protection. *Connick*, 461 U.S. at 146, 103 S.Ct. 1684, 75 L.Ed.2d 708; *see Tang v. Rhode Island*, 163 F.3d 7, 12 (1st Cir.1998). Second, the court evaluates the balance between the employee's First Amendment interests and the government's interests as an employer. *See Rankin*, 483 U.S. at 388, 107 S.Ct. 2891, 97 L.Ed.2d 315; *Mullin v. Town of Fairhaven*, 284 F.3d 31, 39–41 (1st Cir.2002). Finally, if the claim survives both of these tests, the plaintiff employee must show that the protected speech was a substantial or motivating factor behind the adverse employment action; the burden then shifts to the government employer to demonstrate by a preponderance of the evidence that it would have taken the same action absent the protected speech. *See Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. 568; *Wytrwal v. Saco Sch. Bd.*, 70 F.3d 165, 170 (1st Cir.1995). While the first two tests are typically legal determinations subject to *de novo* review, the third is a question of fact which normally belongs to the jury. *Nethersole v. Bulger*, 287 F.3d 15, 18–19 (1st Cir.2002); *O'Connor*, 994 F.2d at 912–13. *Torres–Rosado v. Rotger–Sabat*, 335 F.3d 1 (1st Cir.2003).

■ The *Pickering* decision recognizes that public employees are often the members of the community who are likely to have informed opinions as to the operations of their public employers, operations which are of substantial concern to the public. Were they not able to speak on these matters, the community would be deprived of informed opinions on important public issues. *See* 391 U.S. at 572, 88 S.Ct. 1731, 20 L.Ed.2d 811. Under said rationale, plaintiff would be entitled to raise a claim of First Amendment violation to his protected speech on matters of public concern and his written denouncements which, without more, should not entice defendants to take adverse employment action.

### 2. Defendants' Proffered Reason for their Personnel Actions.

■ Workplace retaliation against public employees based on their speech may be actionable where (1) the speech involves a matter of public concern; (2) the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) the protected speech was a substantial or motivating factor for the adverse employment action visited upon the plaintiff. *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir.

2004); *see Tripp v. Cole*, 425 F.3d 5 (1st Cir.2005).

Notwithstanding activation of plaintiff's First Amendment protection, to support his claim of discrimination, plaintiff needs also to establish that his protected speech was the motivating factor in the adverse employment action taken by defendants.

■ Defendants have submitted plaintiff participated in the scheme at the Department of the Family and was negligent in the performance of his work. Plaintiff contests such claims by raising controversy as to the facts that he had a participation in Ms. Heidy M. Courniel Liranzo obtaining unwarranted benefits. Plaintiff submits that former employee, Mrs. María Mercedes Rivera de Collazo, mother in law of Ms. Courniel Liranzo, falsified plaintiff's signature around October 2001 and he denounced this matter to his supervisor Mrs. Alba Taboas on February of 2002. Plaintiff's controverted facts ¶¶ 3–4. On March 19, 2002, an investigation regarding another applicant, Ms. Olga M. Adorno Ríos, caused an investigation as to plaintiff. Mrs. María Mercedes Rivera de Collazo, the same person plaintiff had previously denounced, was this time originating the claim as to plaintiff's work. *Id.* ¶¶ 6–7. Mrs. Alba Taboas referred to the Audit Office Mrs. María Rivera's complaints, but not the prior denouncements made by plaintiff. Plaintiff Silva Pérez' contention is that defendants Ortega and Arroyo initiated a series of unfounded field investigations against plaintiff as retaliation for his previous denouncement and whistle blowing activities.

Insofar as defendants' claims that there was a work safety issue as a result of the incident of threats to kill, having a gun and the order of protection being obtained, plaintiff submits, it would have been impossible to have been present at the Vega Baja Office, Department of the Family, at the time of the alleged incident, April 1, 2003, because he was admitted at the Veteran's Hospital Psychiatric Unit from April 1, 2003 to April 3, 2003. *Id.* ¶¶ 19–21.

Plaintiff additionally submits there are genuine controversy of facts as to the threats issues raised against him. At the Court hearing regarding the order of protection held on April 16, 2003, to corroborate the original grounds for the temporary order, defendant Arroyo testified that employee Edna Galindez had stated plaintiff had a gun and threatened to kill Mrs. María Rivera de Collazo. Plaintiff's controverted facts ¶¶ 22–24. However, when called to testify, Ms. Galindez denied ever seeing a gun in plaintiff's possession or that he made any threats against any employee or that she had made any comments thereof to defendant Arroyo. *Id.* ¶¶ 25–26. Additionally, five (5) days before the protective order hearing was held, thirty (30) employees of the Vega Baja Office stated they had never felt threatened by plaintiff. *Id.* 28. Mrs. María Rivera de Collazo, the claimed object of the threat, never filed charges or petition of protection on her behalf but these were filed by the Department of the Family and by defendant Arroyo.

In addition to his sworn statement, plaintiff Silva Pérez submits the statement of Jorge Abiel Robles Reyes, an employee of the Vega Baja Office, Department of the Family, as to comments made in his presence by Mrs. María Arroyo. Mrs. Arroyo stated the events would not have happened if Mr. Silva Pérez had not made his denouncements to the Puerto Rico Comptroller and to Washington. Plaintiff's Exhibit 7. A similar sworn statement was provided

by Mrs. Alba Taboas Román. Exhibit 8.[2]

■ The above discussed evidence on record and circumstantial evidence derived from same would not support defendants' claim of being entitled to summary disposition since plaintiff has raised a genuine controversy as to whether political affiliation and/or exercise of First Amendment protected speech was a motivating factor in the adverse employment actions. Although plaintiff must then prove both, that defendants' explanation is false and that the real reason behind defendants' actions was discriminatory animus, it will not always be necessary for the plaintiff to present additional evidence of discrimination beyond that necessary to prove that the proffered reasons are pretextual. *See St. Mary's Honor Center*, 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also Kelley v. Airborne Freight Corp.*, 140 F.3d 335, 349 (1st Cir.1998); *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.* 152 F.3d 17, 24–25 (1st Cir.1998).

■ Temporal proximity of plaintiff's denouncement and adverse employment actions by defendants is a consideration that cannot be disregarded. The Court of Appeals for the First Circuit mentions that in *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir.2000) suggestive timing is relevant to causation in Title VII retaliation cases, and thus cited *Farrell* in a prisoner's First Amendment retaliation case in support of the proposition that "suggestive temporal proximity" is relevant to establishing a causal link between protected conduct and retaliatory action. *Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 494 (1st Cir.2002). *See Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).[3]

Unlike the first two (2) criteria, that is, 1) the speech involves a matter of public concern and 2) the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently, which often involve issues of law amenable to resolution by the court; the third—if it was a substantial or motivating factor for the adverse employment action-, has been treated as normally presenting a fact finding responsibility for the jury. *See Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. 1684; *Pickering v. Bd. of Educ.*, 391 U.S. at 568, 88 S.Ct. 1731; *O'Connor*, 994 F.2d at 912–913; *Gorman–Bakos v. Cornell Coop. Extension of Schenectady Cty.*, 252 F.3d 545, 557 (2d Cir.2001). *See also Nethersole v. Bulger*, 287 F.3d 15, 18–19 (1st Cir.2002); *Shands v. City of Kennett*, 993 F.2d 1337, 1343 (8th Cir. 1993).

Plaintiff may rely on direct or circumstantial evidence regarding the causation or motivation of his free speech on the

---

2. An affidavit indicates having personal knowledge of these events. *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir.2000) (*noting* such affidavits must be made on personal knowledge and set forth facts that would be admissible in evidence); *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 53 (1st Cir.2000) (*finding* affidavits submitted in opposition to summary judgment that merely reiterate allegations made in the complaint without providing specific factual information made on the basis of personal knowledge are held insufficient).

3. *See also Nethersole v. Bulger*, 287 F.3d 15, 18 (1st Cir.2002); *Gorman–Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554–55 (2d Cir.2001); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir.2001); *Hudson v. Norris*, 227 F.3d 1047, 1051 (8th Cir.2000); *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir.2002)(recognized the relevance of temporal proximity in First Amendment retaliation cases). *But see Wagner v. Wheeler*, 13 F.3d 86, 91 (4th Cir. 1993); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 746 (10th Cir.1999).

adverse employment actions. *Guilloty Perez v. Pierluisi*, 339 F.3d 43, 52· (1st Cir.2003); *Lewis v. City of Boston*, 321 F.3d 207, 219 (1st Cir.2003). Thus, as explained herein, from the translated exhibits and attachments, there is a controversy of genuine material facts and there are credibility determinations which preclude the granting of summary judgment as to plaintiff's First Amendment claim.

Defendants have also submitted claims that reasons for adverse employment action as to plaintiff were grounded on administrative investigation of the case, his actions as employee and not because of political discrimination. Reference is made to the internal audit report showing plaintiff failed to comply with norms and regulations of the Nutritional Assistance Program, with regulations related to certification of eligibility of beneficiaries, and with Ethics in Government Law. These are explained in the first letter of intention to dismiss issued on March 20, 2003, stating the justified reasons for possible dismissal.

Among the grounds for dismissal alleged by defendants were that plaintiff:

a) had recommended emergency aid on the same day Mrs. Olga Adorno had visited the local office without corroborating information, such as income or conducting a financial study;

b) failed to verify the origin of the payment of $700.00 said person made to her landlord;

c) codified the case of Mrs. Heidi M. Corniel without doing proper review;

d) failed to verify the physical address reported by Mrs. Providencia Avilés Pizarro during the period of July 1993 to December 2000;

e) extended certification period ·to above without sending this beneficiary notice for interview to perform the corresponding review.

Defendants thus conclude all these actions resulted in benefits being granted improperly.

Plaintiff's opposition rebuts above irregularities by signaling evidence being available to show:

a) Mrs. Olga Adorno did not visit the local office on March 6, 2002, date when emergency benefits were granted but on February 28, 2002. The Department of the Family Regulations provides for emergency relief to be eligible the month it is requested for which having visited on February 28, 2002, Ms. Adorno was eligible to receive benefits on March 2002; an economic study need not be performed to grant emergency relief as can be established with testimonies of plaintiff and Arroyo and the resolution of the Adjudicative Board of the Department of the Family when it applied the same rationale to emergency relief requested by plaintiff through the testimony of a representative of Department of the Family, Ms. Virginia Gaetán; and regulations of the Department of the Family allows interviews to corroborate income to be performed over the phone;

b) as to rent payment by Ms. Adorno of $700.00, a letter from the Executive Director dated June 11, 2002, specifies the contours of evaluation of payments in favor or on behalf of a family unit, stating as not part payments made directly to a creditor by a person who is part of the family. Payment of rent in this case was made by Mrs. Adorno's father directly to her landlord, and payments to cover rent are not considered either under the applicable regulation;

c) as to codifying Ms. Heidy Courniel, plaintiff states that supervisor María Collazo had authority to complete and fill out the forms to codify and it was precisely in this case that plaintiff had denounced Mrs.

Collazo as having falsified his signature to commit fraud to benefit her daughter, as corroborated by the internal audit;

d) insofar as Mrs. Providencia Avilés, plaintiff was not part of the Nutritional Assistance Program nor worked with this person's case by July 1993 and thus could not verify her physical address. The case was opened by a technician, Ms. Lucy Sierra, and signed by the contact person, Mrs. María Rivera de Collazo in 1993. Plaintiff appears in the case on November 11, 1999 and on November 30, 1999 detected irregularities in the case, referring same for official visits to corroborate the address provided. On January 2001, plaintiff closed the case after noticing irregularities. On January 25, 2001, Mrs. Avilés applied again for benefits and was interviewed by Mrs. María Rivera de Collazo and the case was reopened by technician Lucy Sierra, the same person who originally opened the case, although it had been referred to another technician. Plaintiff avers, he was the one who noticed the irregularities in this case and the above two (2) employees were the ones who continued to supervise and reopen Mrs. Avilés' case;

e) as to extending the certification period of Mrs. Providencia Avilés Pizarro, plaintiff submits the record shows he did in fact send a notification of interview to Mrs. Avilés Pizarro on July 7, 2001.

The evidence presented by plaintiff would contradict defendants' claims as to irregularities that justified adverse employment action and establishes genuine issues of facts in controversy, further prompting as to the pretextual nature of defendants' grounds for adverse employment action within the summary judgment standard.

In view of the foregoing, summary judgment in favor of defendants as to plaintiff's First Amendment claims is unwarranted.

## B. Res Judicata and/or Collateral Estoppel.

Defendants submit the administrative determination which relates to the same issues presented by plaintiff in this federal action should warrant *res judicata* and/or collateral estoppel effect for which plaintiff's herein claim should be barred.

 Under 28 U.S.C. § 1738 federal courts are to give the same preclusive effect to judicial proceedings of any state, territory or possession (including the "Commonwealth" of Puerto Rico; *see Felix Davis v. Vieques Air Link*, 892 F.2d 1122, 1124 (1st Cir.1990)) that those judgments would be given in the courts of the state, territory or possession from where the judgments were entered. *See Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Puerto Rico's *res judicata* rules require that "there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." 31 L.P.R.A. § 3343 (quoted in *Schneider VI v. Colegio de Abogados de Puerto Rico*, 670 F.Supp. 1098, 1104 (D.Puerto Rico 1987)), wherein collateral estoppel was inapplicable because the federal claims were not raised in the Commonwealth proceedings. *Schneider VI*, 670 F.Supp. at 1104. *See Schneider v. Colegio de Abogados de Puerto Rico*, 187 F.3d 30, 37 (1st Cir.1999).

 The grounds for preclusive effect discussed by defendants cannot evolve from administrative proceedings before the Department of the Family Official Examiner's Office and a report and a recommendation that served as further support for the adverse employment decision of the Secretary, who was free to adopt or reject same. These issues do not relate to any final and unappealable judgment required

for *res judicata* doctrine to apply.[4]

As to the resolution issued by the Public Service Labor Relations Commission, where a hearing on the merits of the appeal was not taken and the matter was dismissed, without prejudice, these administrative proceedings did not provide for any identity of thing, cause and litigants as claimed by defendants. Plaintiff's constitutional redress now sought in this federal action, was not and could not have been addressed by the administrative agency and as such, plaintiff could not have benefited from a full and fair opportunity to litigate, if any may be found to support the administrative proceedings that were followed. Indeed, the appeal to the administrative decision was dismissed, without prejudice, to allow plaintiff to resort to federal forum and nowhere in the administrative decision was evidence or a finding as to political and/or First Amendment entitlement or discussion of employment discrimination.

■ As such, contrary to *Baez–Cruz v. Municipality of Comerio*, 140 F.3d 24 (1st Cir.1998), the administrative agencies herein did not expressly consider and/or reject plaintiffs' contention of dismissal because of political ideology or First Amendment grounds or factual issues geared towards plaintiffs' federal constitutional claim.[5]

Thus, defendants' request for summary dismissal on *res judicata* and/or collateral estoppel does not prevail.

**C. Qualified Immunity.**

■ In the alternative, defendants have raised qualified immunity defense. Under the doctrine of qualified immunity, government officials are not liable for monetary damages in § 1983 suits unless their actions violate clearly established constitutional or statutory rights of which a reasonable person would have known. 42 U.S.C.A. § 1983. It is defendants' contention that all their decisions were made pursuant to the Department of the Family Official Examiner's Recommendation, the Protective Order issued by the Court of First Instance of Puerto Rico, and the Internal Audit Report, for which no constitutional right was violated even if plaintiff's allegations are established since it was objectively reasonably for defendants to believe their actions would not violate plaintiff's rights.

■ Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396(1982). Once a defendant raises the qualified immunity defense, the plaintiff must come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the

---

**4.** Normally, decisions of administrative agencies are entitled to *res judicata* effect when the agency acted in a judicial capacity. *University of Tennessee v. Elliott*, 478 U.S. 788, 797–798, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986); *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 421–422, 86 S.Ct. 1545, 1559–1560, 16 L.Ed.2d 642 (1966); *McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161, 172 (1st Cir.1987); Restatement (Second) of Judgments § 83 (1982).

**5.** It is well-established that judicially reviewed administrative fact-finding may later estop a federal claim, even though the state administrative body itself was unable to consider the federal claim as such. *See, e.g., Gonsalves v. Alpine Country Club*, 727 F.2d 27, 28–29 (1st Cir.1984).

law and that [the] law was clearly established when the alleged violation occurred. Qualified immunity shields public officials performing discretionary functions from civil damages, so long as their conduct does not violate clearly established statutory or constitutional rights of which an objectively prudent person would be aware. *Ringuette v. City of Fall River*, 146 F.3d 1, 5 (1st Cir., 1998). Essentially, "[q]ualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability,' by attaching liability only if '[t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) (citations omitted); *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■ A qualified immunity defense requires a two-part analysis: "The first inquiry is whether the constitutional right asserted by plaintiffs was clearly established at the time of the alleged violation. The second inquiry, once the Court determines that the right was clearly established, is 'whether a reasonable officer in the same situation would have understood that the challenged conduct violated that established right.'" *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 186 (citations omitted). Under the first prong, an official can only be liable for damages if the unlawfulness of his conduct is apparent in light of preexisting law. *Anderson*, 483 U.S. at 641, 107 S.Ct. 3034. "The second prong demands objective reasonableness from the employer: the actions must be such that 'a reasonable [employer] could have believed [his actions] to be lawful, in light of clearly established law and the information the [acting employer] possessed.'" *Aponte Matos*, 135 F.3d at 186

*quoting Anderson*, 483 U.S. at 641, 107 S.Ct. 3034. Only when these two questions are affirmatively answered "should the court address 'the particular conduct in question'" *Kelley v. LaForce* 288 F.3d 1, 6 (1st Cir.2002) *quoting Abreu–Guzman v. Ford*, 241 F.3d 69, 73 (1st Cir.2001). Only then, the Court should determine "whether an objectively reasonable official would have believe that his conduct was lawful 'in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct.'" *Kelley v. LaForce* 288 F.3d at 6 *quoting McBride v. Taylor*, 924 F.2d 386, 389 (1st Cir., 1991). *See Cruz–Baez v. Negron–Irizarry*, 360 F.Supp.2d 326, 347–348 (D.Puerto Rico 2005).

■ Due to the factual disputes in this case including a possible political discriminatory motivation and the circumstances surrounding defendants' decision to initiate field investigations as to plaintiff, adverse employment action on acts and regulations which have been placed in controversy by plaintiff's opposition, the timing of the employment decision *vis a vis* the denouncement as to agency and employees' corruption, the issuance of a protective order and the participants thereof, all of which are vital to this case as a whole and the Court's assessment of the qualified immunity defense in particular, the Court is not in a position to grant defendants' motion for qualified immunity at this time. *Kelley v. LaForce*, 288 F.3d at 7.

Furthermore, if defendants Arroyo and Ortega participated in the field investigation aimed towards plaintiff because of a discriminatory animus and in the filing of charges before the First Instance Court which factual grounds are now in controversy, they cannot benefit from a claim of relying on the resulting reports, judicial orders and documents they have created. True reasons for discharging plaintiff pres-

ent an "elusive factual question." *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 8, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (*holding* as incapable of resolution on summary judgment for qualified immunity since factual and not legal controversies are at issue).

It has been clearly established, however, that when there is a material dispute of fact, summary judgment cannot be ordered. *Swain v. Spinney,* 117 F.3d 1, 10 (1st Cir.1997). "Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella". *Id.* Questions of facts are to be determined by a jury. As such, defendants' summary judgment request on qualified immunity grounds is Denied.

In sum, due to the fact there are genuine issues of fact and credibility determinations as to plaintiff's claims that dismissal was motivated as retaliation for exercising his First Amendment rights, a discriminatory animus that permeated the administrative actions and violated his due process, First and Fourteenth Amendment rights, and related state claims, summary judgment is not appropriate.

**D. Pendent Jurisdiction over State Claims.**

Defendants have also made a passing reference in their motion for summary judgment as to claims based on Articles III, Sections 1, 6 and 7 of the Constitution of the Commonwealth of Puerto Rico and Puerto Rico laws because there is no federal foundation to plaintiff's claims.

The complaint seeks relief under Law No. 426, 1 L.P.R.A. Section 601, *et seq.,* also known as the Retaliation Against Public Employees Law, which may be construed as the Commonwealth of Puerto Rico Whistle blower Act. See Complaint's Third Cause of Action. Plaintiffs also seek relief under Law No. 80, 29 L.P.R.A. Section 185a, *et seq.,* for unfair dismissal, as well as Article 1802 of the Puerto Rico Civil Code, which imposes liability for damages and/or torts. 31 L.P.R.A. Section 5141.

Pendent or supplemental jurisdiction exists whenever there is a claim arising under the Constitution, the laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute but one constitutional case. The state claims must be linked to the federal claim by a "common nucleus of operative facts", and must be sufficiently substantial to confer federal court jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Rodriguez v. Doral Mortgage,* 57 F.3d 1168, 1175 (1st Cir.1995).

The exercise of pendent jurisdiction as to plaintiff's state claims are subject to the court's discretionary power. Federal claims against defendants survive the motion for summary judgment. Thus, upon an assessment of judicial economy and fairness to litigants, this Court will exercise pendent jurisdiction as to plaintiffs' Commonwealth claims against defendants.

**V. CONCLUSION**

In view of the fact there are genuine issues of fact and credibility determinations as to plaintiff's claims, defendants' request for summary judgment of the federal claims is **DENIED.** The Court will exercise pendent jurisdiction as to plaintiffs' Commonwealth claims against defendants.

IT IS SO ORDERED.