# United States Court of Appeals
## For the First Circuit

No. 04-2588

DARREN M. TRIPP,

Plaintiff, Appellant,

v.

SCOTT COLE; TOWN OF BETHEL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Lynch, and Lipez, Circuit Judges.

Stephen C. Chute, with whom Carey & Associates P.A. was on brief, for appellant.
Anne M. Carney, with whom Norman, Hanson & Detroy, LLC was on brief, for appellees.

September 27, 2005

**LIPEZ, <u>Circuit Judge</u>**.  The events that generated this case began with a "dog at large" in Bethel, Maine and ended with the termination of the town's chief of police.  As a result of the investigation and prosecution of the dog at large incident, a disagreement arose between the police chief, plaintiff-appellant Darren Tripp, and the town manager, defendant-appellee Scott Cole.  Cole wanted Tripp to intercede with the district attorney on behalf of the dog owner; Tripp expressed his discomfort with the request.  Four months later, citing various issues unrelated to the dog at large incident, Cole suspended Tripp for a month; he later fired him.  Tripp then sued Cole and the Town of Bethel, claiming that he had been retaliated against for speech protected under the First Amendment and state law.  The district court granted summary judgment for defendants.  We affirm.

**I.**

**A.        Facts**

We recite the facts in the light most favorable to the non-movant, Tripp, and draw all reasonable inferences in his favor. <u>Smith</u> v. <u>Robertshaw Controls Co.</u>, 410 F.3d 29, 31 (1st Cir. 2005).

In October 2002, Chief Tripp observed a dog at large and called the town's animal control officer.  According to witnesses (including the town engineer), the animal control officer pursued the dog into the owner's garage and captured it there, when,

arguably, it was no longer a dog at large.  A summons was issued to the dog's owner, Sherry Thurston.

Thurston repeatedly called Cole to complain about the summons.  Eventually (after checking with the town engineer), Cole asked Tripp to dismiss the summons.  Tripp -- who surreptitiously recorded the conversation -- responded that the matter was now in the district attorney's hands.  Cole then asked Tripp to ask the district attorney to "dump" the summons, and insisted on Tripp's word that he would do so.  Tripp responded, "I can ask the DA what he wants to do, but when it comes this far, you know I'm not comfortable doing this."

At Thurston's arraignment in November 2002, Tripp dutifully passed along Cole's request to the assistant district attorney (ADA).[1]  That same day, Cole e-mailed Tripp to ask whether he had asked the ADA to dismiss the case.  Tripp went to Cole's office and told him that he had relayed Cole's request, although Cole testified at his deposition that he had no idea whether or not Tripp had relayed the request.  The record is unclear as to what ultimately happened with the summons.

At some point that winter, Tripp spoke to two Bethel selectmen and noted that his relationship with Cole had "cooled," due, in his opinion, to the Thurston summons issue.  The selectmen

---

[1]The record does not reveal the ADA's response.

-3-

agreed, although without a particular basis for personal knowledge disclosed by the record.

In March 2003, Cole gave Tripp a written notice of a one-month suspension from duty with pay. The notice listed a variety of alleged misdeeds by Tripp, some of which were two years old, most of which had never been mentioned to Tripp before, and none of which had ever been noted in his personnel file. Tripp conceded that some, though not all, were true. His suspension ended in April 2003, and he returned to duty.

In January 2004, Cole gave Tripp a document describing Tripp's failure to respond to an armed robbery call in December 2003. The incident was investigated over the next month. In February 2004, Tripp was terminated from his job for cause. He appealed to the Board of Selectmen, which upheld the termination by a 3-2 vote.

## B.      Procedural history

Tripp sued Cole and the Town, alleging a claim under 42 U.S.C. § 1983 and three claims under state law. Tripp does not appeal the disposition of two of the state law claims and we do not discuss them. The claims at issue in this appeal are that defendants retaliated against Tripp for (1) speech protected by the First Amendment, in violation of § 1983 (Count I), and for (2) reporting a violation of Maine law, in violation of the Maine Human Rights Act (MHRA), Me. Rev. Stat. Ann. tit. 5, §§ 4551-4634, and

the Maine Whistleblowers' Protection Act (MWPA), Me. Rev. Stat. Ann. tit. 26, §§ 831-840 (Count III).[2] The case was referred to a magistrate judge, and the parties cross-moved for summary judgment.

The magistrate judge recommended summary judgment for defendants on both claims. Tripp v. Cole, No. 03-289, 2004 U.S. Dist. LEXIS 25124 (D. Me. Sept. 24, 2004) ("Tripp I"). The magistrate judge evaluated the MHRA/MWPA claim first, on the theory that "'[w]hen balancing the rights of the employee against those of the employer, an employee's First Amendment interest is entitled to greater weight where he is acting as a whistle-blower in exposing government corruption.'" Id. at *12 (quoting Guilloty Perez v. Pierluisi, 339 F.3d 43, 53 (1st Cir. 2003)). The magistrate judge found that a reasonable person in Tripp's position would not have believed Cole's request was illegal, and furthermore Tripp never actually reported a violation. On the First Amendment claim, the magistrate judge found that the speech at issue did not address a matter of public concern. The district court reviewed the magistrate's report and recommendation de novo and adopted it in full. Tripp v. Cole, No. 03-289, 2004 U.S. Dist. LEXIS 20740 (D. Me. Oct. 13, 2004). This appeal followed.

---

[2]The MWPA prohibits discrimination against employees because of whistleblowing activities, but the MHRA provides the individual cause of action for an MWPA violation. See infra note 4.

## II.

Passing over two issues that require little discussion,[3] we discern two main arguments in Tripp's appeal. First, he argues that the court wrongly held that his conduct was not protected by the MWPA. Tripp asserts that Cole's request was an unlawful obstruction of government administration which Tripp reported to Cole himself and to two Bethel selectmen. Second, Tripp argues that the court wrongly held that his speech was not protected by the First Amendment because it did not involve a matter of public concern. He argues that his speech involved the important public issue of the legality and propriety of town officials interceding on behalf of affluent citizens to give them more favorable treatment in court. We review the district court's grant of summary judgment de novo. Smith, 410 F.3d at 34.

---

[3]First, Tripp claims that the magistrate judge erred in striking his post-discovery affidavit on the grounds that it contradicted his deposition testimony. The magistrate judge granted the motion to strike but expressly stated that the summary judgment ruling did not depend on this evidentiary ruling because it resolved the case on legal grounds for which the evidentiary dispute was irrelevant. We follow a similar path, assuming arguendo that the affidavit is part of the evidentiary record.

Second, Tripp claims that defendants denied him due process, and therefore the court should have (1) excluded defendants' evidence of reasons for his suspension and termination, and (2) granted partial summary judgment declaring that the reason for the adverse action was retaliation. We read this argument charitably to say that, because defendants did not give Tripp a proper opportunity to respond to the allegations against him, they should not be permitted to rely on those allegations to justify his termination. Because Tripp did not plead a due process claim in his complaint, he has forfeited any such argument.

**A.        Whistleblower Retaliation**

Under the MWPA, "[n]o employer may discharge . . . or otherwise discriminate against an employee . . . because[] [t]he employee, acting in good faith, . . . reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law."  Me. Rev. Stat. Ann. tit. 26, § 833(1)(A).[4]  "[A] prima facie case of reprisal for whistleblowing requires that the employee show that (1) he engaged in activity protected by the statute, (2) he was the subject of adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action."  Bard v. Bath Iron Works Corp., 590 A.2d 152, 154 (Me. 1991).

Under the MWPA, the complained-of conduct need not actually be illegal, but the employee must "prove that a reasonable person might have believed" that it was.  Id. at 155; see also Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 262 (1st Cir. 1999) (explaining that "an employee's reasonable belief that [the conduct] crosses the line suffices").  Tripp argues that it was reasonable to believe that Cole's request to ask the prosecutor to "dump" the Thurston summons was a violation of Me. Rev. Stat. Ann. tit. 17-A, § 751(1), under which "[a] person is guilty of

_____

[4]Although the MWPA itself provides no private right of action, complainants may, after appropriate administrative process, file a civil action under the MHRA.  See Schlear v. Fiber Materials, Inc., 574 A.2d 876, 878-79 (Me. 1990).

obstructing government administration if the person intentionally interferes by force, violence or intimidation or by any physical act with a public servant performing . . . an official function." In Tripp's view, Cole attempted to interfere by intimidating Tripp into seeking the termination of an ongoing criminal proceeding; Tripp informed Cole and two selectmen that such a request was illegal; and he was suspended (and eventually fired) as a result.

The district court found that Tripp had not engaged in protected activity for two independent reasons: (1) a reasonable person would not have considered Cole's request to be an obstruction of government administration, and (2) Tripp never reported to anyone his alleged belief that Cole's request was illegal. See Tripp I, 2004 U.S. Dist. LEXIS 25124 at *15-16. We find the first ground adequate to sustain the judgment, and do not address the second.

Although the language of § 751 could theoretically apply to a broad range of conduct, Maine courts have construed the provision narrowly. In particular, we have not found, and Tripp has not cited, any Maine case where a government official was prosecuted under § 751 for an order to a subordinate employee. To the contrary, in virtually all of the reported cases under § 751 and its predecessor common law doctrine, the defendant had attempted to prevent a law enforcement officer from effecting a search or arrest. Therefore, if we accepted Tripp's theory, he

would be the first victim of that particular form of obstructing government administration in over 100 years of reported Maine cases. To be sure, the words of the statute do not foreclose the possibility that § 751 could apply to a public official's order to a subordinate. But "[i]f we are unwilling to stretch state precedents to reach new frontiers, a litigant like [Tripp], who deliberately chose to reject a state-court forum in favor of a federal forum . . . is in a perilously poor position to grumble about our stodginess." Porter v. Nutter, 913 F.2d 37, 41 (1st Cir. 1990) (quotation marks omitted).

Second, even if it were possible that a town manager's order to a chief of police to ask prosecutors to dismiss a summons could constitute "intentionally interfer[ing] . . . with a public servant performing . . . an official function," Cole's request did not -- and could not have been reasonably believed to -- qualify as "intimidation" under § 751.[5] Maine courts have defined "intimidation" in this context as "unlawful coercion, extortion, duress, or putting in fear." State v. Matson, 818 A.2d 213, 215 (Me. 2003) (quotation marks omitted). Tripp cites Cole's statement that "I made my request and I'm expecting it to be honored." Viewed in the light most favorable to Tripp, this statement might sound like a vaguely worded threat to his continued employment with

_____

[5]Tripp does not claim that Cole interfered by "force, violence, or . . . physical act," id. § 751(1).

the Town.  But Maine courts have interpreted § 751 to require much more than vaguely worded threats.  See Matson, 818 A.2d at 214-15 (vacating § 751 conviction where defendant physically interfered with police officer's arrest of another person, but did not strike officer, threaten him, or call him names, because such conduct was not "intimidation"); State v. Janisczak, 579 A.2d 736, 738 (Me. 1990) (vacating § 751 conviction where defendant had yelled and cursed at officers as they struggled with a large, violent suspect, because such conduct was not "intimidation").  Accordingly, summary judgment was proper on the MWPA claim.

**B.      First Amendment**

According to Tripp, Cole and the Town retaliated against him for speech protected by the First Amendment, namely (1) his conversation with Cole, and (2) his remark to two selectmen that his relationship with Cole had "cooled" as a result of the Thurston summons incident.

In assessing a public employee's claim of workplace retaliation for speech, we apply a three-part test: "(1) whether the speech involves a matter of public concern; (2) whether, when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) whether the protected speech was a substantial or motivating factor in the adverse action against the plaintiff."  Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004).

The district court determined that Tripp's speech at issue did not involve a matter of public concern. We review that decision de novo. O'Connor v. Steeves, 994 F.2d 905, 912 (1st Cir. 1993).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Myers, 461 U.S. 138, 147-48 (1983). In some cases the content alone establishes the public nature of the matter; in others the form and context make it so:

> Where a public employee speaks out on a topic which is clearly a legitimate matter of inherent concern to the electorate, the court may eschew further inquiry into the employee's motives as revealed by the 'form and context' of the expression. On the other hand, public-employee speech on a topic which would not necessarily qualify, on the basis of its content alone, as a matter of inherent public concern (e.g., internal working conditions, affecting only the speaker and co-workers), may require a more complete Connick analysis into the form and context of the public-employee expression, 'as revealed by the whole record,' with a view to whether the community has in fact manifested a legitimate concern in the internal workings of the particular agency or department of government, and, if so, whether the 'form' of the employee's expression suggests a subjective intent to contribute to any such public discourse.

O'Connor, 994 F.2d at 913-14 (citations and emphases omitted).

We first address Tripp's statements to the selectmen that his relationship with Cole had "cooled." These are classic examples of speech concerning "internal working conditions,

-11-

affecting only the speaker and co-workers." Id. at 914. Moreover, the record does not reveal that "the community has in fact manifested a legitimate concern in the internal workings" of the Bethel police department or its interactions with the Town Manager, nor that "the 'form' of [Tripp's] expression suggests a subjective intent to contribute to any such public discourse." Id. That ends that matter.

Perhaps recognizing that the disposition of a particular "dog at large" summons is rarely a "matter of inherent concern to the electorate," id. at 913-14, Tripp invokes larger themes. In his view, the public concern of his speech lay in the principle that "[a] citizen from an affluent neighborhood of the community should abide by the same rules and be subject to the same consequences as those from more modest circumstances." Tripp made a similar argument to the magistrate judge. As she noted, "[a]ccording to Tripp, 'there can be no higher public concern than to have justice evenly administered without the Town's administrators capriciously granting favors to special citizens.'" Tripp I, 2004 U.S. Dist. LEXIS 25124 at *18. However, as the magistrate judge also observed,"[t]he problem with this argument is that it does not identify any 'given statement' by Tripp; it only offers Tripp's personal opinion as to what Cole's personal motives were when he interceded on Ms. Thurston's behalf." Id. The magistrate judge was correct. In the absence of any citation to

evidence in the summary judgment record that Tripp explained to Cole his concern about the unequal administration of justice, Tripp cannot establish that his speech to Cole invoked a matter of public concern which led to his retaliatory dismissal.

Tripp cites only his statement to Cole that he was "not comfortable" with Cole's request. An opaque statement such as "I'm not comfortable doing this" is not "<u>clearly</u> a legitimate matter of <u>inherent</u> concern to the electorate." <u>Id.</u> (emphases added). It certainly does not invoke the unequal administration of justice concern. As stated, the content of Tripp's speech conveyed nothing more than his preference not to intercede with the ADA in the resolution of a particular dog at large summons.

The "form and context" analysis does not assist Tripp either. Under <u>O'Connor</u>, speech on internal working conditions may rise to the level of public concern if "the community has in fact manifested a legitimate concern in the internal workings of the particular agency or department of government, and . . . the 'form' of the employee's expression suggests a subjective intent to contribute to any such public discourse." 994 F.2d at 914; <u>see</u>, <u>e.g.</u>, <u>Baron</u> v. <u>Suffolk County Sheriff's Dep't</u>, 402 F.3d 225, 234-35 (1st Cir. 2005) (noting that community had manifested concern in the internal workings of sheriff's department, citing newspaper articles and report commissioned by governor in response to allegations of mismanagement).

-13-

Here, the record does not reveal either community interest in the process by which citizen complaints regarding summonses for minor infractions are handled, nor any intent on Tripp's part to contribute to (or create) a public discussion on the topic. To be sure, as the magistrate judge noted, "[i]t is not difficult to conceive of slightly different speech under slightly different circumstances that could legitimately be described as primarily of public concern." Tripp I, 2004 U.S. Dist. LEXIS 25124 at *22 n.8. However, "'an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances,' . . . [and] the factual record in this case does not present the kind of content, form and context that should form the basis of a First Amendment claim." Id. (quoting Markos v. City of Atlanta, 364 F.3d 567, 570 (5th Cir. 2004)).

Rather, we think that the district court accurately characterized Tripp's speech in its context:

> [T]he real dispute [was that] Tripp was upset that Cole was poking his nose into police business. . . . Although the 'big picture' might be newsworthy, the actual content, form and context of Tripp's speech reflect that Tripp was speaking primarily as an employee concerned about how he was going to perform his job with regard to the Thurston summons and about private perceptions that directly related to his personal working relationships, not as a concerned public citizen speaking about matters predominantly of public concern.

<u>Tripp I</u>, 2004 U.S. Dist. LEXIS 25124 at *20-21.  For these reasons, Tripp's speech did not address a "matter of public concern," and summary judgment was proper on the First Amendment claim.

**<u>Affirmed</u>**.