**Paz Maria COLON–PEREZ, Plaintiff,**

**v.**

**DEPARTMENT OF HEALTH OF the Commonwealth of PUERTO RICO, et al., Defendants.**

**Civil No. 07–1497 (FAB).**

United States District Court, D. Puerto Rico.

June 11, 2009.

Jely A. Cedeno–Richiez, O'Neill & Gilmore, Julio Cesar Alejandro–Serrano, Nicolas Nogueras–Cartagena, Nicolas Nogueras Law Offices, San Juan, PR, for Plaintiff.

Lumy Mangual–Mangual, P.R. Department of Justice–Federal Litigation, San Juan, PR, for Defendants.

## OPINION AND ORDER

FRANCISCO A. BESOSA, District Judge.

On June 11, 2007, plaintiff Paz Maria Colon–Perez ("Colon") filed a complaint in which she lodged discrimination and retaliation claims pursuant to Title VII of the Civil Rights Act and the Age Discrimination in Employment Act ("ADEA"), Fourteenth Amendment equal protection and First Amendment Free Speech claims pursuant to 42 U.S.C. § 1983, and Puerto Rican Commonwealth law claims. (Docket

No. 1) On September 12, 2008, the Court granted Colon's voluntary motion to dismiss her ADEA claims and her Title VII claim against defendants Greduvel Duran Guzman ("Duran") and Rosa Perez Perdomo ("Perez") in their personal capacity. (Docket Nos. 42 & 45; *see also* Docket No. 48, pp. 1–2, ¶¶ 3–5, stating plaintiff's remaining claims.)

On August 26, 2008 defendants Department of Health of the Commonwealth of Puerto Rico ("DOH"), Perez, and Duran filed a motion for summary judgment. (Docket No. 39) Plaintiff Colon opposed summary judgment on September 22, 2008. (Docket No. 48)

For the reasons provided below, the Court **GRANTS** defendants' motion for summary judgment.

### I. Plaintiff fails to support her opposition to summary judgment adequately

Colon's statement of contested material facts (Docket No. 49) suffers from several shortcomings. These flaws prohibit her from effectively creating a controversy as to the material facts put forward by the defendants. The flaws fall into three categories: (1) Colon fails to submit her own statement of facts; instead she merely addresses defendants' proposed facts; (2) Colon makes irrelevant and ill-timed arguments against defendants' proposed facts in her opposition to those facts; and (3) the sole exhibit adduced by Colon providing facts relevant to her retaliation claim is only in the Spanish language, and thus cannot be considered by the Court. The Court shall address these three issues in sequence.

■ Local Civil Rule 56 directs a party filing a summary judgment motion to support that motion with a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." L. CIV. R. 56(b). The rule also directs a party opposing summary judgment to file a "separate, short, and concise statement of material facts." L. CIV. R. 56(c). In that statement, the party opposing summary judgment must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts." *Id.* Each denial or qualification must be supported by a record citation. *Id.* Leaving semantics aside, Colon complied with the mandatory aspects of this rule.[1] She comes up short, however, in an area of discretion. The local rule also allows the party opposing summary judgment to submit its own statement of additional facts. *Id.* Colon submitted no such statement. To be clear, such a statement is not required, but in a case such as this, where the facts proposed by the defendant do not support plaintiff's causes of action, the burden is on the plaintiff affirmatively to point out to the court actual controversies as to facts, supported by the record, which would prevent the grant of summary judgment for the defendant. *See, e.g., Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001) ("the filing of a motion for summary judgment signals a formidable search for a genuine issue of material fact. If this is not to impose the daunting burden of seeking a needle in a haystack, the court needs help from counsel.").

---

1. As for semantics: Local Rule 56 obligates a party opposing summary judgment to admit, deny or qualify a proposed fact. L. CIV R. 56(c). It does not ask whether the party contests a proposed fact or finds it to be relevant or material. (*See* Docket No. 49, responses to every factual paragraph proposed by the defendants.)

As mentioned above, in addition to not adducing additional facts helpful to her cause, Colon raises inappropriate and ill-timed arguments against defendants' proposed facts. These errors fall into several different categories.

■ First, Colon offers facts unsupported by record citation, such as when she says that "plaintiff's position had an administrative development that was placed outside [the] Secretariat." (Docket No. 49, p. 2, ¶ 8) This averment shall not be considered by the Court because it is not supported by a record citation.

■ Second, and most alarmingly, Colon obliquely references problems that occurred during discovery that prevented her from taking Duran's deposition, as well as the depositions of others at DOH. (Docket No. 49, pp. 2–7, ¶¶ 8, 9, 10) She then argues that because of these difficulties Duran's statement under penalty of perjury should be struck from the record. This is not the proper way to challenge a piece of evidence, and Colon has not provided the Court with sufficient reason to take such a drastic measure as striking Duran's statement. If during discovery, the named defendants or other members of DOH failed to appear for their scheduled depositions then the plaintiff could have taken different steps. Colon could have subpoenaed the defendants pursuant to FED. R. CIV. P. 45. Colon could have also asked the court to intervene if the defendants balked at the subpoenas or failed to comply with their discovery burdens pursuant to FED. R. CIV. P. 26. Colon did neither such thing. The Court shall not allow Colon to raise these issues for the first time at summary judgment. Even if the Court were inclined to hear

such arguments, Colon would need to provide a clear and detailed explanation showing that she complied with her discovery obligations while the defendants did not. Instead, Colon simply states that "no attorney was available to coordinate the depositions." This basic statement, with no greater elaboration as to what transpired between the parties, is not sufficient for the Court to find that the defendants failed to comply with their discovery duties.

■ Lastly, as Colon should well know, documents containing language in Spanish must be accompanied by a certified English language translation. *See* 48 U.S.C. § 864; L. CIV. R. 10(b); *Puerto Ricans For P.R. Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir.2008). A court may not consider documents before it provided in the Spanish language. *Gonzalez–De-Blasini v. Family Dep't*, 377 F.3d 81, 89 (1st Cir.2004). Pages 7 and 8 of plaintiff's sole exhibit, exhibit A, violate this rule because they are entirely in Spanish and are unaccompanied by a certified English language translation. (Docket No. 49–2, Ex. A., p. 7–8) Notably, Exhibit A is the only document in the record that supports plaintiff's assertion that she was "supplanted in her duties by a younger male doctor." This in turn is the only fact proffered by Colon in support of her retaliation claim.[2] Because this document cannot be considered by the Court, Colon is left with no support in the record for her claim that the defendants retaliated against her.

## II.  Factual Background

Colon has worked for the DOH since November 25, 1958. She was initially appointed to the position of "Dietitian 1." During her time at DOH, Colon received several promotions and salary raises; by

---

**2.** Even if plaintiff's proposed facts were admissible they do not support a charge of retaliation pursuant to Title VII because the alleged retaliatory act occurred prior to the date when she filed her EEOC complaint.

February 1, 2001 she held the "career employee" position of "Executive Director III." Her salary is $5,170.00 a month. Although her most recent appointment-related document states that she was assigned to the Deputy Secretariat of Health Protection and Promotion, her current post is actually within the Auxiliary Secretariat of Family Health and Integrated Services ("ASFHIS"). Defendant Dr. Greduvel Duran Guzman ("Duran") has directed ASFHIS from 2006 to the present date. ASFHIS is composed of five separate "divisions" all of which are coordinated by a central office, or Secretariat. The Secretariat in turn divides tasks between three components: programmatic, clinical, and administrative. Each component of the Secretariat is staffed by a different person.

From 2001 to the present day Colon has been tasked with running the programmatic component. Dr. Pablo Monserrate manages the clinical component. Until his retirement on September 30, 2006, Juan Rolon, Esq. managed the administrative component of the Secretariat. He held the position of "Executive Director IV." Upon Rolon's retirement his position was frozen by Duran in compliance with three executive orders: 2005–12, 2006–19, and 2006–27. All three of the orders are focused on reducing payroll costs for the Commonwealth government. Executive Order 2005–12 directs agencies to reduce payroll expenses by at least 10% and to prevent the creation of new career employees. Executive Order 2006–19 directs agencies to eliminate vacant positions absent "extraordinary" situations. Executive Order 2006–27 directs agencies to "freeze" career positions prior to eliminating them and it directs, among other things, that there must be a "justification" and written authorization from the Management and Budget Office before the position can be filled.

Although Rolon's career position was "frozen," a need remained for someone to fulfill his former duties. Duran "detailed" attorney Marco A. Martinez ("Martinez") to cover Rolon's position as of October 2, 2006. Martinez was not awarded any additional compensation and was not appointed to the Executive Director IV position, which had been frozen. Instead he continued as an "Attorney I" in the Department of Health and he earned $3,244 a month. On June 18, 2007, Martinez chose to return to his former placement in the legal division of the Department of Health and Dr. Joan Rivera–Ortiz ("Rivera") was transferred to cover the administrative component of the Secretariat. Rivera has not been appointed to the position of Executive Director IV because that position remains frozen. Duran explains that Rivera replaced Martinez because she had previously worked as the administrator of two other health departments, the division for the prevention of chronic diseases, and the center for help for rape victims.

On June 27, 2006, prior to Rolon's retirement, Colon submitted a letter to Duran in which she requested that she be appointed to the Executive Director IV position upon Rolon's retirement. On November 15, 2006, Colon filed an EEOC complaint in which she alleged age and sex-based discrimination. She stated in her EEOC form that the discrimination took place as early as October 2, 2006 and continued up to the date that she filed the EEOC form.

To explain why Duran "detailed" Martinez to cover Rolon's position, he explained that Martinez had the proper preparation to fulfill the administrative tasks because he had a law degree and an undergraduate degree in microbiology. More importantly, he explains, he would not have to increase Martinez's salary and

thus he could comply with the various executive directives instructing agencies to reduce costs and freeze open positions. He also explained that if Colon were moved away from the programmatic area of the Secretariat then a new person would need to cover her position. This position, according to Duran, requires a higher degree of expertise in "technical areas of the programs," and thus it could be more difficult to find a replacement for Colon, than for Rolon.

### III. Motion for Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. The Rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. *Santiago–Ramos*, 217 F.3d at 52. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an au-

thentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir.2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." FED. R. CIV. P. 56(c); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Material means that a contested fact has the potential to change the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.* at 251, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

### IV. Discussion

#### A. Title VII

Title VII of the Civil Rights Act of 1964 prohibits discrimination against "any individual with respect to his compensa-

tion, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e–2(a)(1). Title VII provides a cause of action for both discrimination and retaliation. *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir.1990). In this case, Colon alleges both an individually actionable discrimination claim for the defendants' failure to promote her and a retaliation claim.

### 1. The failure to promote claim

■■■■ In a Title VII case, discrimination may be shown through direct evidence or through the cumulative effect of indirect evidence of the employer's motivation. *See Lipsett v. Univ. of P.R.*, 864 F.2d 881, 909 (1st Cir.1988); *cf., Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (noting that direct evidence of discrimination is not required for mixed motive analysis). Where a plaintiff produces direct evidence of discrimination, he or she may prevail without proving all of the elements of a *prima facie* case under the well known *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden shifting framework. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

■■■■ Where there is evidence of both discriminatory and non-discriminatory animus, and the plaintiff requests it, the court may evaluate the evidence through the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). *See Moron–Barradas v. Dep't of Educ. of P.R.*, 488 F.3d 472, 480 (1st Cir.2007) (*citing Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 31 (1st Cir.2003)). Under this framework, codified at 42 U.S.C. § 2000e–2(m), a "plaintiff's burden is tempered so that [he or] she need prove only that the

discriminatory action was a *motivating factor* in an adverse employment decision." *Patten v. Wal–Mart Stores East, Inc.*, 300 F.3d 21, 25 (1st Cir.2002). The plaintiff need only establish that the employment decision was motivated in part by a discriminatory animus. 42 U.S.C. § 2000e–2(m). "[T]he employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff." *Desert Palace, Inc.*, 539 U.S. at 94, 123 S.Ct. 2148 (quoting 42 U.S.C. § 2000e–5(g)(2)(B)). To avail itself of the affirmative defense, the employer must "demonstrat[e] that [it] would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e–5(g)(2)(B).

■■■■ Where there is no direct evidence of discrimination, the court may apply the *McDonnell Douglas* framework. Because Colon has adduced no evidence of direct discrimination and because she has not utilized the mixed motive analysis in her briefs, the Court shall apply the *McDonnell Douglas* framework to the claim that the defendants failed to promote her for improper discriminatory reasons.

■■■■ To prove a *prima facie* case of discrimination in a failure to promote claim, the plaintiff must establish by a preponderance of the evidence (1) that she is within a protected class; (2) that she applied for an open position; (3) that she was not selected; and (4) that the employer hired another person for the position whose qualifications were similar to hers. *See Rathbun v. Autozone, Inc.*, 361 F.3d 62, 71 (1st Cir.2004); *Gu v. Boston Police Dep't*, 312 F.3d 6, 11 (1st Cir.2002); *see also McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Petitti*, 909 F.2d at 32. The defendant may then rebut the plaintiff's *prima facie* case by providing a legitimate, non-discriminatory reason for the challenged employment action. *Texas Dep't of*

*Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the defendant provides a legitimate, non-discriminatory reason, then to defeat summary judgment the plaintiff must demonstrate that the reason was pretextual. *Id.* at 254–55, 101 S.Ct. 1089. This may be done by showing that a discriminatory reason more likely motivated the defendant, or by showing that the proffered reason lacks credibility. *Id.* at 256, 101 S.Ct. 1089.

Plaintiff fails to state a claim under the *McDonnell Douglas* framework because she fails to make a *prima facie* case and also because—even assuming *arguendo* that she stated a *prima facie* case—she has not rebutted defendants' proffered legitimate reason for terminating her employment.

■ There can be no doubt that Colon met the first and third elements of a *prima facie* showing because she is a woman and she was not selected for a position that she requested via letter on June 27, 2006. While it is debatable whether the position she applied for was truly open, given that it was frozen, the court views this as a semantic distinction given that the *prima facie* showing is not a demanding one. *See Kosereis v. Rhode Island,* 331 F.3d 207, 213 (1st Cir.2003) ("[w]e have described the *prima facie* case as a 'small showing,' that is 'not onerous,' and is 'easily made.'") (internal citations omitted). Thus the Court finds that the second *prima facie* element is also met. The Court finds, however, that Colon fails to make an adequate showing in regards to the fourth element, that another person was hired to take the position whose credentials were similar to her own. No person was hired to act as an Executive Director IV, the career position held by Rolon. Instead, first Martinez, and then Rivera were transferred internally to take over the

duties held by Rolon, but they were not awarded his career status of Executive Director IV. His exact position remains frozen to this day, although others have carried out his duties.

■ If the Court were to assume *arguendo* that Colon had made the *prima facie* showing it would still find that she fails to state a failure to promote claim pursuant to Title VII because she has not overcome defendants' proffered non-discriminatory rationale for not making her an Executive Director IV responsible for administration within the Secretariat. This requires the Court to put aside for the moment the distinction drawn above (that no one has taken Rolon's Executive Director IV position), and focus solely on who has carried out the administrative task of the Secretariat and why those people were chosen for the administrative duties.

Duran explains that at the time of Rolon's retirement (and to this day) DOH was under pressure from the executive to reduce payroll and other costs. Specifically, executive orders 2005–12, 2006–19, and 2006–27 directed agencies to, among other things, prevent the creation of new career employees, freeze and eliminate vacant positions and reduce payroll by at least ten percent. Pursuant to these executive directives, ASFHIS froze Rolon's career position and detailed Martinez, an employee with a lower salary who was already on DOH's payroll, to cover Rolon's former administrative duties. Duran also explains that he wanted Colon to continue managing the programmatic component of the Secretariat, which he says requires a higher degree of substantive knowledge of the department's programs than does managing the administrative component. In other words, it would be more difficult to cover Colon's programmatic duties, than Rolon's administrative duties.

■ Colon argues that these justifications offered by Duran are pretextual and that the real reason she was not made an Executive Director IV responsible for administrative duties in the Secretariat is because of gender based animus against her. Duran points to absolutely no evidence suggestive of a gender bias such as inappropriate remarks or differential treatment beyond the challenged employment action. Rather Colon attempts to discredit the proffered explanation by pointing out that there are circumstances under which a frozen position may be unfrozen. Her argument goes no further than this, however. She does not explain what "extraordinary" situation existed that would justify unfreezing the Career Executive IV position to award it to her (as required by the executive orders). There is no evidence in the record that Martinez or his replacement Rivera were incapable of carrying out the administrative duties. At summary judgment, it appears that ASFHIS was able to meet the express purpose of the executive orders by transferring other employees internally to cover the administrative duties vacated by Rolon without increasing payroll and without filling a frozen position. These executive orders were promulgated at an executive level, and applied to the entire Puerto Rican government. The bare facts noted by Colon that there was a way around the freezing of a position and that ASFHIS did not attempt to unfreeze the position for her in no way discredits the defendants' proffered legitimate rationale. Accordingly, the Court finds that Colon has failed to state a claim for relief pursuant to Title VII for the denial of a promotion.

## 2. Retaliation

■ An employer may not retaliate against an employee for initiating an action under Title VII. 42 U.S.C. § 2000e–3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.") To establish a *prima facie* case of retaliation, a plaintiff must prove by a preponderance of the evidence that (1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity. *Dressler v. Daniel,* 315 F.3d 75, 78 (1st Cir.2003); *Hernandez–Torres v. Intercontinental Trading, Inc.,* 158 F.3d 43, 47 (1st Cir.1998). "An allegedly retaliatory act must rise to some level of substantiality before it can be actionable." *Noviello v. City of Boston,* 398 F.3d 76, 92 (1st Cir.2005) (citing *Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998)). The scope of the anti-retaliation provision of Title VII, unlike the anti-discrimination provision, "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

■ Colon fails to satisfy the second and third prong of the *prima facie* test. There is no disputing that she engaged in protected activity by filing her EEOC complaint; she points to no more occurrences of adverse employment actions, however, occurring subsequent to filing the EEOC complaint. The adverse action of which she complains, not receiving a promotion to Rolon's Executive Director IV position, was the basis for her EEOC complaint. It did not occur subsequent to her filing of the complaint. There is no basis in the record for finding that actions

were taken against her that could be construed as retaliation, let alone evidence linking such acts to her filing of the EEOC complaint. For this reason, Colon has failed to state a claim for retaliation pursuant to Title VII.

To address an apparent misapprehension on the part of Colon, the Court shall explain that even if it had given credit to the Spanish language exhibit attached to plaintiff's EEOC complaint, her retaliation claim would still fail. In that document the plaintiff alleges in sum that subsequent to her request for the promotion, a young male doctor was placed in her area of the Secretariat and essentially given her duties. Assuming *arguendo* that such an action would qualify as a form of adverse employment action, Colon still would have no retaliation claim because as of the time that this young doctor was allegedly given her programmatic duties, she had not yet filed her EEOC complaint or participated in any other form of enforcement proceedings. For a retaliation claim to proceed, the retaliatory act must occur after a plaintiff complains or participates in an investigation, it cannot occur before; otherwise it would not be retaliation for participating in the Title VII process. It appears to the Court that the plaintiff believes she has a retaliation claim (on her inadmissible Spanish language facts) because an event occurred after she requested the promotion. This is simply not what the retaliation provision against which Title VII protects.

### B. Section 1983 claims

Colon's remaining claims of a violation of her Fourteenth Amendment right to equal protection, and a violation of her First Amendment right to free speech are both raised via 42 U.S.C. § 1983. She raises these claims only against defendant Duran. (Docket No. 48, p. 15, ¶ 35)

"Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right." *Omni Behavioral Health v. Miller*, 285 F.3d 646, 650–51 (8th Cir.2002); *see also Cruz–Erazo v. Rivera–Montanez*, 212 F.3d 617, 621 (1st Cir.2000). It is well settled that in order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges, or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir.1989).

Plaintiff satisfies the first element of proving a section 1983 claim. There is no question in this case that defendant Duran acted under color of state law: he was the director of ASFHIS and he acted in his official capacity when he chose not to promote Colon to the requested Executive Director IV position and instead chose to transfer other employees from DOH to cover the administrative duties of the Secretariat. Defendant, however, disputes whether Colon was deprived of any federal right, privilege, or immunity. This issue shall be discussed in the two following sections addressing plaintiff's equal protection and free speech claims. The Court finds it unnecessary to discuss the third element of a section 1983 claim.

### 1. Equal Protection

Colon alleges that Duran violated her right to equal protection by not promoting her to the Executive Director IV position because he harbored a sex- and age-based animus against her. This claim requires no further analysis than was done above in the Title VII section.

As an initial matter, Colon's claim of age-based discrimination pursuant to section 1983 is foreclosed by the ADEA. *See Tapia–Tapia v. Potter*, 322 F.3d 742, 745 (1st Cir.2003); *Lafleur v. Tex. Dep't of Health*, 126 F.3d 758, 760 (5th Cir.1997); *Chennareddy v. Bowsher*, 935 F.2d 315, 318 (D.C.Cir.1991); *Zombro v. Balt. City Police Dep't*, 868 F.2d 1364, 1369 (4th Cir. 1989). Even if the claim were not foreclosed, it would be subject to rational basis analysis, rather than any form of heightened scrutiny. *See Izquierdo v. Mercado*, 894 F.2d 467, 471–73 (1st Cir.1990). As explained above, the Court finds that Duran's denial of Colon's request for an appointment to the Career Executive IV position was motivated by a legitimate goal: compliance with executive orders to reduce payroll costs. The Court also finds that Duran's transfer of other employees to cover the Secretariat's administrative duties rationally furthered Duran's objective. Thus, Duran's denial of Colon's request for a promotion meets the rational basis test. This leaves Colon with only her sex-based claim for equal protection.

■■■■ "To prove a violation of the equal protection clause, [Colon] must show that the defendant acted with discriminatory intent." *Lipsett*, 864 F.2d at 896 (citing *Washington v. Davis*, 426 U.S. 229, 239–42, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)). Discrimination on the basis of sex violates the equal protection clause if the discrimination fails to "serve important government objectives" and is not "substantially related to achievement of those objectives." *Lipsett*, 864 F.2d at 896 (quoting *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)). Because a showing of discriminatory intent is necessary to make out a claim of disparate treatment under Title VII, the analytical framework for proving discriminatory treatment pursuant to Title VII claims is equally applicable to claims of sex-based discrimination pursuant to the equal protection clause. *See Pontarelli v. Stone*, 930 F.2d 104, 113–14 (1st Cir.1991), *abrogated on other grounds, Graphic Comm'ns Int'l Union, Local 12–N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 4–5 (1st Cir.2001); *Lipsett*, 864 F.2d at 896; *White v. Vathally*, 732 F.2d 1037, 1039 (1st Cir.), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984). The analysis that the Court carried out in the preceding section addressing Colon's Title VII claim applies fully to her equal protection claim for sex-based discrimination. Therefore, as with the Title VII claim, the Court rejects Colon's sex-based equal protection claim.

## 2. A government employee's right to free speech pursuant to the First Amendment

■■■■ "A government employee retains the First Amendment right to speak out, as a citizen, on matters of public concern, so long as the employee's speech does not unduly impede the government's interest, as employer, in the efficient performance of the public service it delivers through its employees." *O'Connor v. Steeves*, 994 F.2d 905, 912 (1st Cir.1993). Colon alleges that her First Amendment right was violated when she was not granted a promotion to the Executive Director IV position. She alleges that the June 27, 2006 letter that she sent to Duran in which she requested the promotion is a form of protected speech. She believes that Duran retaliated against her when he did not grant her the promotion that she requested in the letter.[3]

---

**3.** Colon also alleges that the placement of a young male doctor in her office after she sent the request for a promotion was another form of retaliation for sending the letter to Duran.

As an initial matter, the Court notes-although it was not contested by the parties-that a private letter from an employee to her supervisor may contain protected speech pursuant to the First Amendment. *See Givhan v. W. Line Consol. Sch. Dist.,* 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *see also Rankin v. McPherson,* 483 U.S. 378, 381, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (finding that a spoken statement made by an employee to a coworker qualified for First Amendment protection); *O'Connor,* 994 F.2d at 916. (The speech need not be made in a more public setting.) Courts apply a sequential three-part test to determine whether a government employee has presented an actionable claim for the violation of her First Amendment right to free speech. *O'Connor,* 994 F.2d at 912–13 (noting that courts principally derive these tests, or elements of a claim, from three United States Supreme Court cases: *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), *Connick v. Myers,* 461 U.S. 138, 146–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Courts ask (1) whether the speech involves a matter of public concern; (2) whether when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) whether the protected speech was a substantial or motivating factor in the adverse action against the plaintiff. *See, e.g., Rosado–Quinones v. Toledo,* 528 F.3d 1, 5 (1st Cir.2008); *Tripp v. Cole,* 425 F.3d 5, 10 (1st Cir.2005); *Mihos v. Swift,* 358 F.3d 91, 102 (1st Cir.2004). In this case, the Court need go no further than the first part of the test.

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684. In some cases, the content alone may establish the public nature of a matter, in other cases the form and context of the speech may make it a matter of public concern. *Tripp,* 425 F.3d at 11. For example,

[w]here a public employee speaks out on a topic which is clearly a legitimate matter of inherent concern to the electorate, the court may eschew further inquiry into the employee's motives as revealed by the "form and context" of the expression. On the other hand, public-employee speech on a topic which would not necessarily qualify, on the basis of its content alone, as a matter of inherent public concern (e.g., internal working conditions, affecting only the speaker and co-workers), may require a more complete *Connick* analysis into the form and context of the public employee expression, "as revealed by the whole record," with a view to whether the community has in fact manifested a legitimate concern in the internal workings of the particular agency or department of government, and if so, whether the "form" of the employee's expression suggests a subjective intent to contribute to any such public discourse.

*O'Connor,* 994 F.2d at 913–14 (internal citations omitted). The Supreme Court has admonished, however, that "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest, absent the most unusual

---

As discussed above, these proposed facts are unsupported by admissible evidence at summary judgment stage and therefore are not discussed in this opinion.

circumstances" a federal court should not review the wisdom of the challenged personnel decision. *Connick*, 461 U.S. at 147, 103 S.Ct. 1684.

In her June 26, 2006 letter, Colon requests an appointment to the Executive Director IV position upon Rolon's retirement. She then goes on to discuss her work history at DOH and her qualifications for the position. Lastly, she explains why she wants the position and mentions that she would be willing to negotiate a salary increase. This letter is a classic example of speech concerning internal working conditions affecting only the speaker and co-workers. *See, e.g., Rosado–Quinones*, 528 F.3d at 5; *Tripp*, 425 F.3d at 11; *O'Connor*, 994 F.2d at 914. Colon attempts to endow her request for a promotion with a public interest flavor by suggesting generally that the qualifications of government employees for their position is a matter of public interest. She provides no evidence to suggest that there was any particular public interest in whether she received a promotion or as to whom would fulfill the administrative duties within the Secretariat of ASFHIS. Nor has she provided any evidence of even general public interest in the operation of ASFHIS as a whole. Instead, she cites to *Pendleton v. City of Haverhill*, 156 F.3d 57 (1st Cir.1998), a case in which the plaintiff, a substitute teacher, asserted a claim for defamation (as well as a section 1983 claim for the violation of his liberty interest) and the court analyzed whether the plaintiff qualified as a public figure. In *Pendleton*, the First Circuit Court of Appeals determined that the plaintiff became a limited purpose public figure after he granted an interview to a reporter, which in turn lead to the publication of a newspaper article about him. In essence, this article advocated for the plaintiff's appointment to a permanent teaching position and it used the racial composition of the public school

faculty, a matter of intense public concern, as a reason favoring the plaintiff's appointment. *Id.* at 69. This case does not stand for the proposition, suggested by Colon, that the qualifications of all public employees or perhaps only of candidates for public posts are matters of public concern. Nor does it involve any analysis of the *Pickering/Connick/Mt. Healthy* line of cases. Therefore, the Court finds that *Pendleton* provides Colon with no support for her proposition that the content of her letter (a request for a promotion) was a matter of public concern.

The form and context analysis of her June 26, 2006 letter also fails to suggest that it is a matter of public concern. The language of the letter itself fails to suggest a subjective intent to engage in speech concerning a matter of public interest. As noted in the preceding paragraph, the record also fails to reveal any community interest in the qualifications or identity of the person who would handle administrative duties for the Secretariat of ASFHIS. *Cf. Baron v. Suffolk County Sheriff's Dep't*, 402 F.3d 225, 234–35 (1st Cir.2005) (relying upon newspaper articles and a report commissioned by a governor to find that a community had manifested concern in the internal workings of a sheriff's department). Accordingly, the form and context analysis of the June 26, 2006 letter reveals that Colon's request for a promotion is not a matter of public concern. Colon's failure to make an adequate showing pursuant to the first prong of the three-part test obviates the need to engage in analysis under the second and third prongs of the test. Her First Amendment claim of retaliation based upon protected speech fails.

## C. Commonwealth Law Claims

Because no federal claim remains to ground jurisdiction in this case, Colon's

commonwealth law claims against defendants are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## V. Conclusion

For the reasons discussed above, the Court **GRANTS** defendants' motion for summary judgment. Colon's Title VII discrimination and retaliation claims, as well as her section 1983 equal protection and first amendment claims are **dismissed with prejudice.** Her Puerto Rico Commonwealth claims are **dismissed without prejudice.**

Costs, expenses and attorneys' fees are awarded to defendants.

Judgment shall enter accordingly.

**IT IS SO ORDERED.**